Reuben PALMER, et al.,
Plaintiffs-Appellees,

v.

CITY OF CHICAGO,
Defendant-Appellant.

No. 84–2943.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1986.

Decided Nov. 26, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 14, 1987.

William Carlisle Herbert, Hopkins & Sutter, Robert W. Fioretti, Office of Corp. Counsel, Chicago, Ill., for defendant-appellant City of Chicago.

Michael E. Deutsch, Chicago, Ill., for plaintiffs-appellees Reuben Palmer, et al.

Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The City of Chicago has appealed from an order that it pay $113,000 in interim attorney's fees to the plaintiffs in this civil rights case. The award of fees was made under the authority of 42 U.S.C. § 1988, which authorizes the award of reasonable attorney's fees to "prevailing" parties. The question we are asked to decide is whether, for purposes of section 1988, you can win by losing. But we cannot reach that question without first satisfying ourselves that the order to pay is appealable.

The suit is a class action under section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Brought in 1982 on behalf of state criminal defendants and convicts in Chicago, it challenges the constitutionality of the Chicago police department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal "street files." The district court issued a temporary restraining order directing the city to preserve such material pending decision on the plaintiffs' motion for a preliminary injunction. In compliance with this order the city adopted retention procedures that in 1983 the district court by a preliminary injunction required the city to continue and in certain respects amplify. 562 F.Supp. 1067 (N.D.Ill.1983). Later that year the court awarded the plaintiffs $117,000 (subsequently reduced to $113,000) in attorney's fees for work done to obtain the preliminary injunction. 576 F.Supp. 252 (N.D.Ill. 1983). A year later the court ordered the city to pay the $113,000 immediately, 596 F.Supp. 1060 (N.D.Ill.1984), and it is from that order that the city appeals.

Meanwhile the city had appealed from the grant of the preliminary injunction, and in 1985 this court reversed. 755 F.2d 560 (7th Cir.1985). We held that class members who had already been convicted had no standing to seek an injunction against

the city's practice; it could do them no good. If they wished to complain about their convictions, their remedy was to apply for habeas corpus. *Id.* at 571–72. With regard to class members who were awaiting trial, we held that the principle of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), barred the injunction; their proper remedy against concealment of exculpatory material would be to raise a constitutional defense in the pending state criminal proceedings. 755 F.2d at 576. We also held, however, that the convicted defendants were entitled to a preliminary injunction (patterned on the temporary restraining order) directing the city to preserve the defendants' files until the defendants could discover whether they had any basis either for mounting a collateral attack on their convictions or for obtaining damages under section 1983 for violation of their constitutional rights. *Id.* at 573, 577. We remanded the case for the entry of a suitable injunction.

With the case back in the district court, the plaintiffs' lawyers inspected the files but found nothing on which they could base a claim that any member of the class had been convicted in violation of the Constitution. The lawyers say they think the files were "stripped" of all exculpatory materials, but do not propose to try to prove this. Eventually the city moved to dismiss the case for want of prosecution. The motion was granted; and although it seems that no judgment dismissing the suit was actually entered, and although the plaintiffs filed a motion to reinstate the suit, at argument their counsel acknowledged that they did not intend to pursue the case further.

■ Although the case is effectively over and done with, we cannot ground our jurisdiction of the city's appeal from the order to pay interim fees on the existence of a final judgment winding up the entire litigation. Not only was no such judgment (it seems) entered, but no notice of appeal from it has been filed. The only notice of appeal is from the district court's order, issued back in 1984, directing the city to

pay the plaintiffs forthwith the $113,000 in interim attorney's fees that the court had previously awarded. If the 1984 order was not in some sense a final order we have no appellate jurisdiction over it just because, in the interim, the litigation has for all practical purposes come to an end.

Attorney's fees usually are awarded after the final judgment; since there is then nothing else pending in the district court, the fee award is a final order in an uncontroversial sense, appealable under 28 U.S.C. § 1291. The order to pay interim fees that was issued in 1984 neither wound up the entire litigation nor was entered after the litigation had been disposed of by some other order.

Another unavailing possibility would be to regard the fee award as a pendant to the preliminary injunction. When an order is properly appealed, another closely related order that would not be appealable independently can be reviewed along with it if that is the most efficient way of proceeding. See *Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir.1985), and cases cited there. This principle might have authorized the city to appeal from the original fee award, provided the appeal could be taken in time to be consolidated with the appeal from the preliminary injunction, which had been issued before the fee award was made. But the city did not attempt to appeal from that award. It waited till the court ordered it to pay the amount awarded. It was then too late to consolidate the fee order with the preliminary injunction—or, if not too late, still no effort at consolidation was made.

That leaves as the only possible route of appeal the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). As conventionally formulated, the doctrine has three elements. The issues pertinent to the correctness of the order must not overlap those in the underlying litigation. The order must be definitive rather than tentative. And the harm it threatens to inflict on the party seeking to appeal must not be preventable by appealing at the end of the case; in other words, the appellant must show irreparable harm. If there is a unifying theme to the complex rules governing the appeal of interlocutory orders within the federal system, it is that such orders are appealable only when they threaten irreparable harm. See, e.g., *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981).

The three elements are well illustrated by the facts of *Cohen*, a shareholders' derivative suit. A state statute required the plaintiff in such a suit to post a bond to cover the defendant's costs in the event the defendant won. The district court denied the corporate defendant's motion to require the posting of a bond, holding that the statute was inapplicable to a suit in federal court. The defendant appealed. The Supreme Court held that the order denying the motion was indeed appealable. The denial was final, the issue resolved by it was unrelated to the merits of the derivative suit, and a final judgment in favor of the defendant would not repair the harm should the plaintiff not be good for the defendant's costs.

The Court's brief discussion has spawned an immense jurisprudence of collateral orders. See 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3911 (1976); *id.*, 1986 Supp. Although the test first stated in *Cohen* remains canonical, as with so many multi-"pronged" legal tests it manages to be at once redundant, incomplete, and unclear. The second "prong" is part of the third. If the order sought to be appealed is not definitive, an immediate appeal is not necessary to ward off harm; there is no harm yet. The first "prong" seems unduly rigid; if an order unless appealed really will harm the appellant irreparably, should the fact that it involves an issue not completely separate from the merits of the proceeding *always* prevent an immediate appeal?

The incompleteness of the test comes from the fact that it leaves out of account the need to compare the irreparable harm if an immediate appeal is not allowed with the

irreparable harm if it is allowed. The Supreme Court's decision in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), which held that orders disqualifying counsel in civil cases are not collateral orders, illustrates this point. Although such an order, like an order requiring burdensome discovery, can impose irreparable harm on a party who is not entitled to recover his costs of suit even if he ultimately wins, allowing an immediate appeal would disrupt the conduct of the trial and undermine the trial judge's responsibility for the management of the litigation. That is also why discovery orders can almost never be appealed.

 *Koller* suggests an interpretation of the requirement of separability or "collateralness" different from and more functional than the conventional interpretation illustrated by such cases as *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1117 (3d Cir.1986): an order is collateral if an appeal would not interfere with the litigation in the district court. We interpreted "collateral" in this functional, pragmatic sense in *United States v. Dorfman*, 690 F.2d 1230, 1231–32 (7th Cir.1982), decided before *Koller*. An order that is collateral in this sense is appealable immediately if postponing appellate review till the end of the case would cause substantial irreparable harm to the party against whom the order was directed. The interim fee order in this case thus was collateral, and we shall therefore concentrate our attention on the question whether the city would have been irrevocably harmed by being forced to pay the interim fees and to wait till the end of the entire litigation before seeking their recovery through an appeal.

The district judge thought the city would not be able to show irreparable harm, see 596 F.Supp. at 1064, because we had held in *Mulay Plastics, Inc. v. Grand Trunk Western R.R.*, 742 F.2d 369 (7th Cir.1984), that a party against whom a monetary sanction is imposed for abuse of pretrial discovery cannot appeal from the sanction until the final judgment in the underlying suit. The appeal in *Mulay*, however, failed simply because the appellant could not show any irreparable harm from being made to pay his opponent immediately. He could appeal from the sanction at the end of the entire suit, and if he won the appeal his opponent would repay the money. See *id.* at 370. But if back in 1984 the City of Chicago had been forced to turn over $113,-000 in attorneys' fees to the plaintiffs, it might not have been able to get the money back by means of an appeal from a final judgment entered (say) in 1986. The class is a "revolving fund" of prisoners and defendants, and a class member who received attorney's fees in 1983 might very well no longer be a party in 1986, might be insolvent, might have disappeared—all three things might be true. If the entire $113,-000 were paid out to prisoners and defendants, the case would be very similar to *Cohen*, where denial of the defendant's motion to require the posting of a bond created a danger that the defendant would never be able to recover its costs of suit, to which it was entitled by statute if it won the suit.

If (but for this appeal) the fees would have been disbursed to the lawyers rather than retained by the prisoners and defendants, the problem would be less serious. Although the recipients would be nonparties, and the city asserts that to get its money back it would have to sue them for restitution, we assume that the district court has an inherent power to order attorneys to whom fees were paid over by their clients pursuant to court order to repay the fees should the order be reversed. But we do not think that back in 1984, when the city had to decide within thirty days whether to file a notice of appeal, it was required to investigate the fee arrangements between the plaintiffs and their attorneys in order to determine whose pockets the fees would end up in if the city complied with the order (which was to pay the plaintiffs, not their attorneys). To show irreparable harm it is enough to show that there was a danger—there was no more than that in *Cohen* —that the fees would disappear into insolvent hands.

So that the scope of our holding will not be exaggerated, we emphasize that the collateral order doctrine is not applicable merely because a discovery order or some other interlocutory order will force the party against whom it is directed to pay out money that he may not be able to recover by a final judgment in his favor. Most such orders are not even collateral within the meaning we derive from cases like *Koller*. Allowing the immediate appeal of such orders would bring on a regime of piecemeal litigation with a vengeance. But an order to pay fees is genuinely collateral; it can be appealed (provided the requirement of irreparable harm is satisfied) without any disruption of the proceedings on the merits. Certainly this appeal did not threaten or cause any interruptions, quite apart from the fact that the underlying proceedings have now petered out. The fact that the merits of the order and the merits of the underlying litigation may be related is not decisive.

Notice, though, that it is the order to pay, issued in 1984, not the award itself, made in 1983, that makes the award appealable by virtue of the collateral order doctrine. The city was not irreparably harmed by being told that it owed the plaintiffs $113,000 but did not have to pay till further notice (the 1983 order). The threat of irreparable harm arose when the city was told to pay immediately, in circumstances where if the payment order was later held invalid the city might very well not be able to get all its money back.

Lest the term "interim order" convey an ineradicable impression of something tentative, subject to revision, and hence incapable of inflicting irreparable harm on the would-be appellant, cf. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468–69, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *In re UNR Industries, Inc.*, 725 F.2d 1111, 1118–20 (7th Cir.1984); *Hastings v. Maine-Endwell Central School Dist.*, 676 F.2d 893, 896 (2d Cir.1982), we point out that the term is a misnomer as applied to the 1984 order. There was nothing tentative about it. As far as the district judge was con-

cerned it was a final order to pay $113,000. The reason he ordered immediate payment was that he could conceive of no set of circumstances, including reversal of his preliminary injunction, that would excuse the city from having to pay the fees incurred in getting that injunction. The order was not in his mind subject to any further revision. In this respect, and also because the city might not be able to get back the fees paid out under the district court's order at the end of the litigation, this case is different from *Hastings*, where the Second Circuit held that an award of interim fees was not appealable under the collateral order doctrine. The award there was tentative and in addition, as the court also noted, there was no suggestion that if the award were later reversed the defendant could not get its money back.

We turn at last to the merits of the fee award.

■ A district court has the power to award fees before the entry of a final judgment, *Hanrahan v. Hampton*, 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (per curiam), and this must mean—since the whole purpose of such an award is to enable the plaintiffs and their lawyers to see some cash before the entire litigation winds up—a power to order payment in advance of the final judgment. So we do not doubt that the district court had the power to make the order it did. But the order was valid only if the fee award was proper; and a fee award is proper "only when a party has prevailed on the merits of at least some of his claims." *Id.* at 758, 100 S.Ct. at 1989. (In light of this holding, the plaintiffs' reliance on *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2d Cir.1975), which preceded *Hanrahan* and allowed attorney's fees with respect to certain claims that were dismissed, is misplaced.) The plaintiffs, we now know, have lost this case; and when a judgment on which an award of attorney's fees to the prevailing party is based is reversed, the award, of course, falls with it. The plaintiffs asked for a preliminary injunction, they got it, but this court threw it out.

The only relief we allowed was an order (never actually entered by the district court, so far as we can determine) directing the city to retain its "street files" and allow convicted members of the plaintiff class to inspect them for information which they might use either to get their convictions overturned or to get damages for wrongful conviction. This relief was in the nature of a discovery order, that is, an order that gives a party a chance to obtain evidence or information useful to his cause. Such an order is worthless if discovery turns up nothing; indeed, it is worse than worthless, because then the party has incurred an expense without obtaining any benefit from it. That is what happened here. Upon reviewing the files the plaintiffs' counsel were unable to find anything worthwhile. That is why they have allowed the case to peter out. They went on a fishing expedition, and the pond was empty. Maybe the city removed the fish, but at the moment that is just a slander (albeit a privileged one, because made in court). The relief that the plaintiffs obtained, after this court reversed the district court's grant of a preliminary injunction, was equivalent to a procedural victory won by a party who goes on to lose his case: a Pyrrhic victory. The Supreme Court held in *Hanrahan* that fees cannot be awarded for a procedural victory—in that case the reversal, on the plaintiffs' appeal, of directed verdicts for the defendants, and a remand for a new trial. 446 U.S. at 758–59, 100 S.Ct. at 1989–90. Yet the plaintiffs had not lost; they just had not won yet. The outcome was still uncertain.

Here, we now know, the plaintiffs lost— unless it is possible to win by losing, a proposition we reject. It is true that you can win a case by obtaining a settlement, even though one condition of the settlement might be the dismissal of the suit. See, e.g., *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980); *Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir.1981); *Gekas v. Attorney Registration & Disciplinary Comm'n*, 793 F.2d 846, 848 (7th Cir.1986) (per curiam). As a matter of fact all money settlements, and many other settlements as well, provide for dismissing the suit. See Fed.R.Civ.P. 41(a)(1); *McCall-Bey v. Franzen*, 777 F.2d 1178 (7th Cir.1985). You can also win, we may assume without having to decide, if after some relief has been obtained the case becomes moot—is in effect interrupted before it can reach its normal conclusion (unless the plaintiff caused it to become moot). See, e.g., *Grano v. Barry*, 783 F.2d 1104, 1109 (D.C.Cir. 1986); Comment, *Civil Rights Attorney's Fees Awards in Moot Cases*, 49 U.Chi.L. Rev. 819 (1982). In *Williams v. Alioto*, 625 F.2d 845, 847–48 (9th Cir.1980) (per curiam), for example, the plaintiffs obtained a preliminary injunction against "pat-down" searches conducted as part of a police operation called "Zebra." While the appeal from the injunction was pending, Operation Zebra ended, and the court of appeals dismissed the appeal and vacated the injunction on grounds of mootness. Far from having lost the case, the plaintiffs had won everything they sought: an injunction against searches conducted in connection with Operation Zebra. While the injunction was in force it conferred a benefit on the plaintiffs: it spared them the indignity of such searches. After the searches ceased, the plaintiffs had no further need for the injunction. The present plaintiffs, however, lost their case. They sought and obtained a temporary restraining order and preliminary injunction, but the only part of the relief granted by these two orders that survived the appellate process was ancillary to damage claims that have failed. The plaintiffs acknowledge that the case is now dead.

It might seem that unlike the situation in a damage action, where you have won nothing till you get a judgment and if the judgment is reversed on appeal you have nothing to show for the lawsuit, a plaintiff who obtains a preliminary injunction has won something even if the injunction is reversed; for unless it is stayed, it constrains the defendants' conduct until it is reversed. Indeed, from this standpoint it would make no difference whether the pre-

liminary injunction was vacated as moot (as in *Williams*) or reversed. This line of argument is foreclosed, however, by our decision in *Ekanem v. Health & Hospital Corp.*, 778 F.2d 1254, 1258 (7th Cir.1985), which holds that a plaintiff who gets a preliminary injunction that is later reversed is not a prevailing party for purposes of an award of attorney's fees. See also *Smith v. University of North Carolina*, 632 F.2d 316, 346–53 (4th Cir.1980). In such a case the plaintiff has lost, whereas in a case that becomes moot after the preliminary injunction is entered the plaintiff has not lost; the injunction is vacated not because the plaintiff has failed to sustain his case but "to make sure that a decision of which the losing party was denied appellate review will not have preclusive effect in subsequent litigation between the parties," *CFTC v. Board of Trade*, 701 F.2d 653, 656–57 (7th Cir.1983).

The plaintiffs say they won in a practical sense because the city has stopped discarding exculpatory material in police department files. But at oral argument the plaintiffs' counsel conceded that if they had brought a damage suit against the city, and lost, and the next day the city had said, "Well, we won, but we think the plaintiffs have a point, and we have decided to change our procedures," there could be no award of attorneys' fees under section 1988. Or suppose (as in fact happened here) that a plaintiff gets an injunction to which he has no legal right but the defendant complies pending appeal, thus conferring a benefit on the plaintiff. As is apparent from *Ekanem* and *Smith*, this kind of benefit cannot support a fee award. "If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978). This principle is dramatically illustrated by *Doe v. Busbee*, 684 F.2d 1375, 1381–83 (11th Cir.1982), where the Eleventh Circuit denied any award of attorney's fees to plaintiffs who had obtained injunctions

that, though later reversed, had while in effect enabled 1,800 women in the plaintiff class to obtain Medicaid-reimbursed abortions.

*Mantolete v. Bolger*, 791 F.2d 784 (9th Cir.1986), though questionable under *Hanrahan*, is in any event distinguishable from this case, since the plaintiff had prevailed on several substantive issues on appeal, although her right to ultimate relief had not yet been determined. The only relief the plaintiffs in the present case obtained that survived the appellate process was a procedural ruling which turned out to have no substantive value at all. *Jensen v. Stangel*, 790 F.2d 721, vacated and reh'g en banc granted, 795 F.2d 888 (9th Cir.1986), another recent Ninth Circuit decision, held over a strong dissent that an unsuccessful civil rights plaintiff who manages to fend off an award of attorney's fees to the defendant may obtain an award of attorney's fees for his success in the defendant's fee proceeding, viewed as a separate "civil rights" case in which the plaintiff is the prevailing party. We doubt that this is correct, and since the decision has been vacated we mention it only to show how extreme the plaintiffs' position in the present case is; for *Jensen*, even if good law, would not control a case such as this where there is only one civil rights case and the plaintiff loses it. Still another recent Ninth Circuit decision, *Clark v. City of Los Angeles*, 803 F.2d 987, 990–91 (9th Cir.1986), is also distinguishable from the present case, though again we are not at all clear that we agree with it. The plaintiffs brought a damage suit alleging harassment by the police. They won a substantial judgment but it was reversed because of an erroneous evidentiary ruling and the case was remanded for a new trial. The plaintiffs then dismissed the case voluntarily because the harassment had ceased. The court of appeals held that they were entitled to attorney's fees. The case was still in progress when the parties, in effect, settled it informally—the police stopped harassing the plaintiffs, and the plaintiffs stopped trying to get damages

for past harassment. The suit was never determined to lack merit, as was the present suit. But see *Miami Herald Publishing Co. v. City of Hallandale,* 742 F.2d 590, 591 (11th Cir.1984) (per curiam) ("The Miami Herald's suggestion that it has 'prevailed' because its claims were not rejected on the merits is ill taken").

■ The civil rights attorney's fees statute does not reward a plaintiff who brings an unmeritorious suit, merely because by some fortuity the suit brings about changes favorable to him. The coercive effect of litigation on a defendant is by no means entirely dependent on the litigation's having merit, especially in a regime (the regime created by section 1988, as interpreted) which makes it easy for a winning plaintiff, but difficult for a winning defendant (see *Hughes v. Rowe,* 449 U.S. 5, 14–16, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980) (per curiam)), to obtain attorney's fees. The idea that litigation can be a weapon for obtaining benefits irrespective of the merits of the litigation underlies the torts of malicious prosecution and abuse of process, as well as the antitrust principle, discussed in our decision in *Grip-Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 471–73 (7th Cir.1982), that allows firms to complain about being harassed by lawsuits filed against them by their competitors. The plaintiffs in this case may have "won" in the *Realpolitik* sense in which a lawsuit can achieve its ends even if it has no legal merit, but the lack of merit is not irrelevant to a claim that the other party—winner in law, though loser in fact—should be made to pick up the tab for the plaintiff's attorney's fees. This court has held that these plaintiffs had no business bringing this suit, except insofar as they were trying to collect damages, which they have signally failed to do. The injunction aspect of the suit may have shaken the police department and caused it to make changes in record-keeping procedures but the fact remains that there was no legal basis for seeking federal injunctive relief except, as we have said, relief ancillary to a claim for damages that has turned out to be meritless too. Because the suit was not friv-

olous, the city (meaning the taxpayers) must swallow the costs of the defense. It is not, however, required to pay its opponent's costs. The suit was not ineffectual or frivolous, but it failed, and people who bring losing suits must bear their own attorneys' fees. See *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

■ When a suit that is "frivolous, unreasonable, or groundless" is settled before judgment, there will be no award of attorney's fees even though the suit helped the plaintiff in the settlement negotiations. *Harrington v. DeVito, supra,* 656 F.2d at 266–67. If the quoted words are intended as synonyms (as we treated them in *Gekas v. Attorney Registration & Disciplinary Comm'n, supra,* 793 F.2d at 849; see also *Hennigan v. Ouachita Parish School Board,* 749 F.2d 1148, 1151–52 (5th Cir. 1985)), the implication is that the settling plaintiff need only show that the suit was not frivolous to avoid being denied fees because his suit lacked merit. Even so, when a suit goes through to judgment for defendants, or is abandoned as hopeless by the plaintiffs, the plaintiffs cannot be regarded as having prevailed within the meaning of the statute even if their lawsuit was not frivolous (that is, so groundless that sanctions could be imposed for having brought it) and even if the suit brought about some or for that matter all of the changes in the defendants' conduct that the plaintiffs had sought. When a suit is settled, the district judge doesn't want to be bothered determining whether or not it has merit, merely to determine the ancillary question of attorney's fees; so he asks only whether the suit was nonfrivolous, a simpler inquiry. But when the suit is not settled and ultimately fails, the judge has no need to make a separate inquiry into its merit. Merit has been determined; that determination controls the issue of attorney's fees.

We have difficulty understanding the force of the plaintiffs' argument that because the preliminary injunction was re-

versed on the authority of *Younger* rather than on the basis of a finding that the plaintiffs' constitutional rights had not been violated, the plaintiffs can somehow be regarded as prevailing parties. If you lose a case because the statute of limitations has run or because the court lacked subject-matter jurisdiction or because venue was improperly laid, still you've lost and are not the prevailing party. This case is distinguishable from *Thomas v. Honeybrook Mines, Inc.*, 428 F.2d 981, 984 (3d Cir.1970), where the plaintiffs' suit was dismissed on jurisdictional grounds but was promptly refiled and reinstated, and where the filing of the suits was the catalyst for other successful suits in which the plaintiffs also participated and which produced the relief that the plaintiffs had sought in the two suits they had filed; or *Lampher v. Zagel*, 755 F.2d 99 (7th Cir.1985), where after abstention the plaintiff prevailed in state court, then returned to the federal court and got a favorable judgment there too. The plaintiffs in this case brought suit in the wrong court and the suit was thrown out, for good, except for a discovery-type order which proved in the end to have no value. As a matter of fact it is now clear, as it was not when we reversed the grant of the preliminary injunction, that the plaintiffs' claim has no substantive merit, as well as having been brought in the wrong court. The claim depends on there being exculpatory material in the street files—and there isn't any. The suit has been abandoned because it has been shown to have, in fact, no legal merit.

The order to pay attorney's fees is reversed with directions to dismiss the fee petition. To help bring the underlying case to a close we suggest that the district court, on the basis of the representations made by the plaintiffs' counsel in this court, dismiss their motion to reinstate the case. One final point. After the argument in this case the plaintiffs' counsel submitted to the clerk of this court, with a request to distribute to the panel, a letter commenting on a case that the defendant's counsel had cited in oral argument and then in a letter to the court filed under Circuit Rule 11. Rule 11 authorizes counsel, without obtaining the court's permission, to notify this court of pertinent and significant authority that comes to counsel's attention after his brief has been filed or oral argument held. Rule 11 expressly forbids argumentation, and the defendant's letter complied with this stricture. Rule 11 does not authorize responses to Rule 11 submissions. Nor (what is the same thing) do our rules authorize parties to file, without leave of court, supplementary briefs following argument. The plaintiffs' letter of October 30 is an unauthorized brief; leave to file it should have been but was not requested. We trust that this violation of our rules will not recur.

REVERSED.