**RIVERHEAD SAVINGS BANK; First Federal Savings and Loan Association, Plaintiffs–Appellees,**

**and**

**Federal Savings and Loan Insurance Corporation, as receiver for Umpqua Savings and Loan Association, Third Party Defendant,**

v.

**NATIONAL MORTGAGE EQUITY CORPORATION, David A. Feldman, Wehner and Perlman, Defendants–Appellants.**

No. 88–6135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1989.

Decided Jan. 12, 1990.

---

Rodney M. Perlman, Wehner & Perlman, Los Angeles, Cal., for defendants-appellants.

David L. Furth, Shartsis, Friese & Ginsburg, San Francisco, Cal., for plaintiffs-appellees.

Robert J. Yorio, Owen, Wickersham & Erickson, San Francisco, Cal., for third party defendant.

Before FLETCHER, NELSON, Circuit Judges, and CARROLL, District Judge.*

---

* Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

NELSON, Circuit Judge:

The underlying case from the district court is composed of a number of consolidated cases. All cases concern the promotion and sale of mortgage pool certificates by National Mortgage Equity Corporation and David Feldman (collectively NMEC). Plaintiffs–appellees Riverhead and First Federal (savings banks) purchased mortgage backed pass-through certificates from NMEC. Riverhead purchased one of the certificates packaged by NMEC from appellee Umpqua, a third-party defendant with respect to the claims at issue on this appeal.

Appellants, NMEC and its attorneys, Wehner & Perlman, appeal an order imposing sanctions on them jointly and severally for filing frivolous counterclaims against Riverhead and First Federal and a frivolous third-party claim against Umpqua. We find that we have no jurisdiction to hear the appeal from the imposition on appellants of sanctions payable to Riverhead and First Federal because the issue has been mooted by settlement. The lower court order remains standing as entered. The controversy with respect to the award of fees to Umpqua is still live, and we have jurisdiction to review it under the collateral order doctrine. Because we find that NMEC's claim for equitable indemnity against Umpqua was not frivolous, we reverse the district court's order for sanctions in favor of Umpqua.

## FACTUAL AND PROCEDURAL BACKGROUND

Riverhead sued NMEC, among other defendants including Umpqua, for federal securities laws violations, RICO violations, fraud, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, breach of contract, and negligent performance of duty. In its complaint, Riverhead alleged that NMEC knew that the properties securing the mortgages NMEC packaged were overvalued, falsely appraised, and inadequately secured the loans; that the loans had a high default rate; and that the mortgagors were not creditworthy. Riverhead alleged that NMEC packaged the certificates knowing that these defects would result in a substantial loss of the moneys invested in the certificates NMEC packaged. Riverhead sought repayment of the amounts it paid for the certificate it purchased from Umpqua and punitive damages. First Federal brought similar claims against NMEC for its role in packaging the mortgages and marketing the pass-through certificates.

Concurrently with its answers to the First Federal and Riverhead complaints, NMEC filed cross-claims and third-party claims against Riverhead and its officers. NMEC sued Riverhead for trade libel, libel, and slander, alleging that Riverhead had made false claims about NMEC that resulted in the loss of NMEC's business. NMEC sued Riverhead's officers for equitable indemnity, alleging that they had failed to exercise due diligence in purchasing the certificates. NMEC sued First Federal for breach of contract, alleging that First Federal violated express written warranties regarding its expertise to evaluate the certificate and the mortgages. NMEC also sued First Federal for fraud on the ground that First Federal had represented falsely its expertise and review of the investment. NMEC sued Umpqua for equitable indemnity, alleging that to the extent that it was liable to Riverhead for failing to carry out its responsibilities in providing suitable mortgage loans for the Umpqua/Riverhead certificate or failing to advise Riverhead of material facts with regard to Riverhead's purchase of the certificate, Umpqua was responsible because it sold the certificate to Riverhead.

The district court dismissed all of NMEC's cross and counter claims except the defamation claim against Riverhead. It imposed sanctions on NMEC for filing a frivolous motion. It reasoned that the claims against the savings banks were "completely frivolous" and that NMEC had sought grossly inflated damages. It also found that NMEC's claim for equitable indemnity against Umpqua was clearly contrary to settled law, citing *Seamen's Bank for Savings v. Superior Court*, 190 Cal. App.3d 1485, 236 Cal.Rptr. 31 (1987). The

district court awarded $42,129.00 in sanctions to the savings banks—an amount equal to 75% of the banks claim for actual fees and costs in defending the motion. The court found the claim reasonable, but reasoned that one fourth of the costs were spent responding to the defamation claim, which was not resolved. The court also refused to impose $25,000 as a penalty. Umpqua had not requested a specific amount. The court awarded Umpqua $15,000 "[b]ased on a review of Umpqua's papers on the motions (as well as a review of all of the other papers) and the Court's knowledge of prevailing rates in San Francisco as well as in Los Angeles for work of this kind (which is in excess of $150 per hour)."

NMEC appealed both sanctions awards. Subsequently, NMEC settled its underlying dispute with Riverhead and First Federal. The settlement included a release by the savings banks of all right, claim, and interest in any outstanding and unpaid monetary sanctions awarded by the district court in favor of the savings banks and against NMEC or its counsel, including the savings banks' portion of the sanctions at issue in this appeal. The savings banks refused to include in the settlement, however, a vacation or setting aside of the district court's underlying Rule 11 order.

## DISCUSSION

■ Whether specific conduct violated Rule 11 is a legal issue which we review de novo. *Woodrum v. Woodward County, OK*, 866 F.2d 1121, 1127 (9th Cir.1989).

### I. *Sanctions in Favor of the Savings Banks*

During this appeal NMEC settled with the savings banks. NMEC and its attorneys maintain that they still have standing because of their interest in reputation. The savings banks stated in a letter to this court that they believe the settlement moots the appeal with regard to sanctions imposed in their favor. They did not, however, file a motion to dismiss the appeal as moot. Because mootness implicates the court's jurisdiction, we will consider the

issue sua sponte. *Taxpayers for Vincent v. Members of the City Council of Los Angeles*, 682 F.2d 847, 849 n. 1 (9th Cir. 1982), *rev'd on other grounds*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

### A. Mootness

Under Article II section 2 of the Constitution, the federal courts lack power to decide questions that cannot affect the rights of litigants in the case before them. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974) (per curiam). Therefore, if there is a complete settlement of the underlying cause of action the case is moot. *Lake Coal Co. v. Roberts & Schaefer Co.*, 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985) (per curiam). If, then, NMEC and the savings banks were able to address and resolve the sanctions issue in their settlement the appeal is moot.

■ Sanctions under Rule 11 can be made payable either to the clerk of the court or to the opposing party. Because sanctions assessed against counsel or a party and payable to the clerk of court pursuant to the court's inherent powers are not subject to revocation by the parties, they are reviewable on appeal regardless of whether the parties settle. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200 (11th Cir.1985).

■ In this case, however, fees were directly payable to the savings banks and they released all right, claim and interest in any outstanding and unpaid monetary sanctions as part of the settlement. A determination by this court of the legal issues underlying the sanctions order is no longer necessary to compel payment of fees, and could not prevent it. *See DeFunis*, 416 U.S. at 317, 94 S.Ct. at 1706. Therefore, this settlement has mooted the portion of this appeal concerning attorney's fees and costs awarded to the savings banks. *See Kleiner*, 751 F.2d at 1199.

### B. Vacating the Lower Court Order

The established practice of the appellate courts in dealing with a civil case which has

become moot while on appeal due to circumstances over which appellant had no control is to reverse or vacate the judgment below. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). The court in *Munsingwear* reasoned that the lower court judgment should be vacated because it "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was solely preliminary." *Id.* at 40, 71 S.Ct. at 107.

The *Munsingwear* reasoning, however, does not apply when an appellant, by his own act, has mooted an appeal. *See Ringsby Truck Lines v. Western Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir.1982). In that situation, vacating the judgment has a different effect. "If the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books." *Id.*

■ In the instant case the parties addressed and resolved the attorney's fee issue in their settlement. During the settlement talks they specifically bargained over whether the sanctions order should be vacated. NMEC, presumably for consideration, agreed to settle without vacation of the order. NMEC, after freely negotiating and signing a settlement mooting the appeal without vacating the judgment, "is in no position to complain that [its] right of review of an adverse lower court judgment has been lost." *Id.* Thus, in this case, the balance "between 'the competing values of finality of judgment and right to relitigation of unreviewed disputes'" clearly requires that the trial court's sanction order stand as entered. *Allard v. DeLorean*, 884 F.2d 464, 467 (9th Cir.1989) (quoting *Ringsby*, 686 F.2d at 722).

## II. *Sanctions in Favor of Umpqua*

In addition to the fee award in favor of the savings banks appellants seek review of the sanctions order awarding attorney fees to Umpqua for the costs of responding to a frivolous third party claim. The sanctions award was imposed jointly and severally on the defendants and their non-party counsel. We find that we have jurisdiction to hear this portion of the appeal and we reverse the district court's imposition of sanctions in favor of Umpqua.

### A. Jurisdiction

■ Absent a certificate under Fed.R. Civ.P. 54(b), a lower court order awarding Rule 11 sanctions against a *party* generally is not appealable prior to the entry of final judgment. *In re Coordinated Pretrial Proceedings*, 747 F.2d 1303, 1305 (9th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2323, 85 L.Ed.2d 841 (1985). A sanctions order imposed solely on a *non-party* to pay attorney's fees and costs falls within the collateral order exception to the finality rule and is appealable immediately as a final order. *See Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 648 (9th Cir.1982). In *Kordich v. Marine Clerks Assoc.*, 715 F.2d 1392, 1393 (9th Cir.1983) (per curiam) this circuit decided that when an order is imposed jointly and severally on a *party* and *non-party* it does not fall within that exception and is not immediately appealable. Because there was a substantial congruence of interests between the nonparty and party in *Kordich* and the sanctions award might have been modified by or merged into the final judgment, there was no basis for an interlocutory appeal. *Id.* at 1393 n. 2; *cf. In re Coordinated Pretrial Proceedings*, 747 F.2d at 1305–06 (holding that the interests of the Attorney General and of the state were so congruent that a sanctions order could not be treated as final and appealable, even though imposed solely against the Attorney General, a non-party).

■ In this case, although there is the same congruence of interests between NMEC and its attorneys that was present in *Kordich*, there is no chance that the award will be modified or merged into a final judgment because the sanctions must

be paid immediately. The *Kordich* court specifically left open this question: whether an order to pay fees imposed jointly and severally against a party and a non-party is immediately reviewable if it is made enforceable prior to entry of final judgment. *Kordich*, 715 F.2d at 1393 n. 2. We find that on the specific facts of this case such an order is reviewable under the collateral order doctrine.

The collateral order doctrine allows appeal from a small class of interlocutory orders. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). "To come within the 'small class' of decision excepted from the final-judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978).

The sanctions order at issue in this case satisfies the first criterion. The order conclusively determines the question of whether sanctions were appropriate. Sanctions imposed during the pendency of a case, but not made immediately payable, may be rescinded later or modified by the court. *Kordich*, 715 F.2d at 1393 n. 2. When the district court makes the order subject to execution prior to final judgment, however, it is clear that the decision is not tentative. *See Ortho Pharmaceutical Corp. v. Sona Distributors*, 847 F.2d 1512, 1515 (11th Cir. 1988); *Cheng v. GAF Corp.*, 713 F.2d 886, 889 (2d Cir.1983).

The order also meets the second condition for immediate appealability under the *Cohen* doctrine: it resolves an important issue separate from the merits. Because the sanctions award is substantial—$15,000 —it raises an important issue. *See Ortho Pharmaceutical Corp.*, 847 F.2d at 1515–16. The issue raised by an award of sanctions for the filing of frivolous counterclaims, which were dismissed from the case, is also separate from the merits of the case; the court need not discuss the merits of the remaining claims in order to determine whether the dismissed claims were frivolous. *See White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166–67, 71 L.Ed.2d 325 (1982); *Ortho Pharmaceutical Corp.*, 847 F.2d at 1515–16.

The court also finds that the sanctions order satisfies the third *Cohen* criterion of effective unreviewability on appeal from a final judgment. The sanctions order effectively may be unreviewable if appeal is delayed until after final judgment because Umpqua currently is in receivership. A strong likelihood of insolvency satisfies the third prong of the collateral order doctrine test because review of the sanctions order effectively would be denied if return of the money awarded were impossible. *See Rosenfeld v. United States*, 859 F.2d 717, 722 (9th Cir.1988). Several courts have held that the financial instability of the recipient of a sanctions award renders the order effectively unreviewable for purposes of the collateral order doctrine. *See, e.g., Palmer v. City of Chicago*, 806 F.2d 1316, 1319–20 (7th Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987) (holding that an award of interim attorney's fees was appealable under the collateral order doctrine as soon as it became enforceable, because there was a significant danger that "the fees would disappear into insolvent hands" from which the city could not recover them if the award were reversed on appeal); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1122–23 (5th Cir.), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970) (holding that a discovery sanctions order was appealable because prompt review was necessary to protect funds that would be subject to the claims of an intervening party); *cf. Matter of Hawaii Corp.*, 796 F.2d 1139, 1143 (9th Cir.1986) (holding that because recovery of shareholder distribution from thousands of shareholders would be difficult, interlocutory appeal was appropriate under *Cohen* ).

Umpqua is currently in FSLIC receivership. This fact constitutes sufficient evidence of financial instability. "To show irreparable harm it is enough to show that there was a danger—there was no more than that in *Cohen*—that the fees would

disappear into insolvent hands." *Palmer,* 806 F.2d at 1319.

### B. Merits

Rule 11 provides, in relevant part, that [t]he signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not imposed for any improper purpose....

Fed.R.Civ.P. 11.

One of the problems Rule 11 is designed to address is the filing of frivolous pleadings. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986). Because "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1537 (9th Cir.1986), courts "have interpreted [Rule 11's] language to prescribe sanctions, including fees, only in the 'exceptional circumstance,' where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987)); *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

■ An objective standard of reasonableness applies to determinations of frivolousness. *Woodrum,* 866 F.2d at 1127. "The key question in assessing frivolousness is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law." *Hudson v. Moore Business Forms Inc.,* 827 F.2d 450, 453 (9th Cir.1987).

Riverhead filed complaints against NMEC alleging a number of strict liability statutory violations, RICO violations, securities laws violations, fraud and breach of fiduciary duty, breach of contract and intentional and negligent torts. The essence of Riverhead's claims was that NMEC had not carried out its responsibilities in providing suitable mortgage loans for the Umpqua/Riverhead certificate nor adequately advised Riverhead of material facts. Concurrent with its answer to these claims, NMEC brought a single claim for equitable indemnity against Umpqua and an officer of Umpqua. The basis for this claim was Umpqua's failure to investigate adequately NMEC's investment package, the mortgages, and the value of the underlying property and Umpqua's own concealment of material facts in its sale of the certificate to Riverhead. NMEC also alleged that Umpqua "represented and warranted to NMEC that it had fully disclosed to Riverhead all facts and information known to it regarding the risks and merits of the mortgage-backed pass-through certificate program and all information Umpqua [obtained in evaluating the loans]," and that NMEC relied upon these representations by Umpqua.

■ The district court found that there was no reasonable basis for NMEC's equitable indemnity counterclaim. It held that *Seamen's Bank for Savings v. Superior Court,* 190 Cal.App.3d 1485, 236 Cal. Rptr. 31 (1987), directly prohibited this claim.[1] Because "[w]e believe a plausible good faith argument can be made by a competent attorney to the contrary", we

---

1. Umpqua also argues that the sanctions should be sustained because NMEC also knew that the District Court had dismissed all claims against Umpqua seeking contribution or indemnity asserted by any party, and that NMEC was barred from pursuing such claims any further. The pleadings for which NMEC and its counsel were sanctioned were filed on November 24, 1987. Umpqua's motion for Good Faith Settlement Determination and To Dismiss Claims for Indemnity was not filed until May 10, 1988 and was not granted until June 29, 1988, a full seven months after the pleadings were filed. The reasonableness of an attorney's conduct for the purposes of Rule 11 sanctions is to be evaluated by inquiring into what was reasonable to believe at the time the pleading was submitted. *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1537 (9th Cir.1986); *Cunningham v. County of Los Angeles,* 869 F.2d 427, 435 (9th Cir. 1988). Because NMEC could not be expected to know in November what would occur in June of the following year, the sanctions award cannot be sustained on this basis.

reverse the sanctions. *Zaldivar*, 780 F.2d at 833.

■■■■■ Indemnification is not available under federal securities laws. *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 674 (9th Cir.1980), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). Nor is there a right of indemnification for intentional torts. *See, e.g., Allen v. Sundean*, 137 Cal.App.3d 216, 186 Cal.Rptr. 863, 869 (1982). Under California state law it is clear "that a securities wrongdoer or anyone who has committed an active fraud cannot escape loss by shifting his responsibility to another party." *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir.1988).

■■■ However, in California, a tortfeasor "may cross claim for indemnity against any subsequent tortfeasor whose negligence has exacerbated the original injury." *Holland v. Thacher*, 199 Cal. App.3d 924, 245 Cal.Rptr. 247, 249 (1988); *American Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). Equitable indemnity is permitted for all torts including negligence, misrepresentation, defamation and injurious falsehood when the would-be indemnitor and indemnitee are jointly and severally liable to the plaintiff. *See Cicone v. URS Corp*, 183 Cal.App.3d. 194, 212, 227 Cal.Rptr. 887 (1986). At least one of Riverhead's claims against NMEC is founded on negligence. NMEC's claim that Umpqua falsely represented to NMEC that it had disclosed to Riverhead material facts about NMEC's alleged negligence in structuring the investments establishes a basis for joint and several liability to Riverhead. Therefore, unless the district court is correct and *Seamen's* so clearly prevents NMEC's counterclaim that no reasonable attorney could distinguish between the two cases, NMEC's claim is not frivolous under Rule 11.

*Seamen's* involved many of the parties to this action. In *Seamen's*, the underlying action was a suit by Bank of America, the trustee, against its own employees for losses resulting from Bank of America's settlement with the NMEC investors. The bank alleged that the employees violated their obligation to care for and control the NMEC transactions. The employees filed cross-complaints against the defrauded investors, including Seamen's, alleging that the employees were entitled to equitable and implied contractual indemnification from the NMEC investors because the investors violated a duty to the bank. This duty required the investors to review the investments prior to participation and to behave prudently in connection with the investments.

The California court held that a defendant has no cause of action for equitable indemnity against the victim of his own tort. *Seamen's*, 236 Cal.Rptr. at 35. The court reasoned that the investors and the bank employees are not joint tortfeasors because the investors owed no duty of care to the bank. Moreover, there is no equitable basis for a tortfeasor's claim for indemnity from his victim. *Id.* at 35–36.

NMEC alleges in the indemnity claim that Umpqua wronged a *third party* by *reselling* the certificates without revealing material facts of which it was or should have been aware. NMEC does not claim that Umpqua contributed to its own harm by failing adequately to investigate the investment, or that Umpqua contributed to the liability of a wrongdoer by failing adequately to protect itself against the wrongdoer's misdeeds. Umpqua is not, unlike Seamen's Bank, only a victim in the underlying action—it also is alleged to have wronged a third party. This is the position taken by the investors who sued both NMEC and Umpqua as jointly liable for their damages.

Although *Seamen's* makes clear that Umpqua owed no duty of care to NMEC, the relationship between two tortfeasors does not determine the availability of indemnity. It is the relationship of the tortfeasors to the plaintiff that is controlling. *Jaffe v. Huxley Architecture*, 200 Cal. App.3d 1188, 246 Cal.Rptr. 432, 434 (1988). Umpqua, as seller, owed a duty to Riverhead.

The rule in *Seamen's* that "a defendant has no cause of action for equitable indemnity against the victim of his own tort" does not necessarily preclude an action for partial indemnity against one who is a concurrent tortfeasor against a third party and whose asserted liability is based on actions or inactions other than susceptibility to the would-be indemnitee's own tort. NMEC has a legitimate argument that *Seamen's* was distinguishable and that equitable indemnity would be available under California law. Therefore, we hold that *Seamen's* does not so clearly bar appellants' claim for indemnification from Umpqua in the Riverhead action as to warrant the imposition of sanctions.[2]

DISMISSED as to the order imposing sanctions payable to Riverhead and First Federal.

REVERSED as to the order imposing sanctions payable to Umpqua.

**2.** NMEC also sought indemnification for Riverhead's RICO claims. Case law, here also, does not so clearly bar NMEC's claims as to warrant sanctions. While courts have held that there is no right to indemnification or contribution (partial equitable indemnification) under RICO, *see, e.g., Minpeco, S.A. v. ContiCommodity Servs., Inc.,* 677 F.Supp. 151, 154 (S.D.N.Y.1988); *Nelson v. Bennett,* 662 F.Supp. 1324, 1338 n. 23 (E.D.Cal.1987); *Jacobson v. Western Montana Prod. Credit Assoc.,* 643 F.Supp. 391, 396 (D.Mont.1986); *Seminole Electric Cooperative Inc. v. Anthony Tanner,* 635 F.Supp. 582, 584 (M.D.Fla.1986), neither the 9th Circuit nor the Supreme Court have disposed of the issue. With no higher court ruling, it certainly would not violate Rule 11 for NMEC to argue that such a right existed.