Bertha **BALARK**, et al., Plaintiffs–Appellants,

v.

**CITY OF CHICAGO, a municipal corporation, et al., Defendants–Appellees.**

Nos. 95–1181, 95–1182.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1995.

Decided April 5, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied May 2, 1996.*

---

* Judge Flaum did not participate in the consideration of this petition.

Cecile Singer, Chicago, IL, Edward T. Stein (argued), Chicago, IL, for Plaintiffs-Appellants in No. 95-1181.

Jerome Schur, Pretzel & Stouffer, Chicago, IL, John B. Cashion and Edward T. Stein (argued), Chicago, IL, for Plaintiff-Appellant in No. 95-1182.

William Wenzel, Office of the Corporation Counsel, Chicago, IL, James D. Montgomery, Montgomery & Associates, Chicago, IL, Dodge Wells, Department of Justice, Civil Division, Washington, DC, Sharon Baldwin, Lawrence Rosenthal, Eileen Brewer, Diane M. Pezanoski, Brian Trubitt, Benna R. Solomon (argued), Stuart D. Fullerton, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, Locke E. Bowman, III, Chicago, IL, for Defendants-Appellees.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

More than twenty years ago, Sylvia Evans settled a wrongful death action against the City of Chicago for $67,500. That lawsuit, and the later action brought by the Balark plaintiffs, gave rise to the litigation that now comes before this Court for the fourth time. In the Evans and Balark class actions, the plaintiffs challenged the City's practice of paying tort judgments of $1,000 and less before it paid larger judgments. Between May 20, 1984 and June 29, 1994, the plaintiff classes and the City were parties to a consent decree that governed the order in which judgments would be paid, methods for funding payments, and ancillary matters. Eventually, for reasons that we explain below, the consent decree was vacated pursuant to Fed. R.Civ.P. 60(b)(5). The question before us today is narrow: are the plaintiffs entitled to attorneys' fees as "prevailing parties" under 42 U.S.C. § 1988 for their efforts in obtaining and maintaining the decree while it was in effect, or does the fact that they ultimately lost the decree defeat this claim? We conclude that parties who win a consent decree in a case brought under 42 U.S.C. § 1983 qualify as "prevailing parties," and thus may obtain appropriate attorneys' fees under § 1988, even if the decree is later modified or terminated pursuant to Rule 60(b).

## I

The relevant facts for present purposes have more to do with the procedural history of this case than with the underlying claims. The Evans plaintiffs and the Balark plaintiffs brought separate suits against the City under § 1983 raising constitutional challenges to the City's delays in paying tort judgments and its practice of paying smaller judgments ($1000 or less) before earlier-entered larger ones. The district court certified two distinct classes: the Evans class included tort judgment creditors holding judgments larger than $1,000 whose payments were more than one year overdue, and the Balark class included tort judgment creditors holding judgments larger than $1,000 whose payments were less than one year overdue. On January 28, 1981, the district court consolidated the two actions for disposition and entered partial summary judgment for both. The judgment was broad in scope, striking down several Illinois laws that authorized the City's practice, finding violations of both the Equal Protection and Due Process clauses of the Constitution, and enjoining the City's practice of paying the judgments of $1,000 or less before earlier-entered larger judgments. See *Evans v. City of Chicago*, 689 F.2d 1286, 1291 (7th Cir.1982) (*Evans I*).

Plaintiffs appealed and the City cross-appealed from the judgment. Applying the equal protection analysis set forth in *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court was able to discern no rational basis for the City's decision to create two categories of tort judgment holders, those with "large" and those with "small" judgments. *Evans I* at 1299–1300. It therefore upheld most of the district court's order, with the exception of a section declaring Ill. Rev.Stat., ch. 85, § 9–104(b), unconstitutional and setting forth minimum procedural safeguards.

Upon remand to the district court, the parties negotiated the consent decree that underlies the current appeal. On May 31, 1984, the district court approved a consent decree that required the City to pay all judgments in the order in which they were entered, and to pay all judgments promptly. It also required the City to appropriate sufficient funds annually to satisfy its anticipated tort liabilities. The decree was prospective

in nature, in that it expressly left open all claims for damages. It covered all tort judgments that remained unpaid as of December 31, 1983, and the payment of future judgments beginning in 1984. See *Evans v. City of Chicago*, 873 F.2d 1007, 1012 (7th Cir.1989) (*Evans II*); *Evans v. City of Chicago*, 995 F.2d 1393, 1396–1398 (7th Cir.1993), *vacated and rev'd*, 10 F.3d 474 (7th Cir.1993) (en banc) (*Evans III*).

As of May 31, 1984, then, the question of injunctive relief appeared to be resolved. The City was subject to the consent decree, and to the best of our knowledge it was complying with the decree. Two additional questions remained before the district court: the question of damages that the decree had left open, and the question of attorneys' fees. The case returned to the district court in 1987 for computation of damages. Plaintiffs then made a decision that they have surely regretted with the benefit of hindsight: they re-opened the question of liability that this Court had settled in *Evans I*, and they argued that the City's practice of distinguishing between tort judgments and other judgments (known as enterprise and contract judgments) also violated the Equal Protection clause. The district court agreed and expanded the scope of the *Evans I* injunction accordingly. In addition, it awarded damages to the plaintiffs.

The City appealed from the new judgment, challenging both the 1987 rulings and asking this Court to revisit its *Evans I* decision. We noted that the plaintiffs' decision to go beyond the scope of the remand for computation of damages and to reopen the equal protection issue had allowed the City in turn to introduce more evidence explaining its conduct. That new evidence left the Court in substantial doubt as to the correctness of its original decision, which persuaded the Court to invoke an exception to the law of the case doctrine and to reconsider *Evans I*. The result of that reconsideration was the finding in *Evans II* that the City's practice of paying small tort judgments in advance of larger ones was supported by a rational basis. This in turn required a reversal of the earlier finding of an equal protection violation and the damages that had been computed at the second phase of the trial. The Court similarly found that the City's decision to treat tort judgments differently from contract or enterprise judgments was supported by a rational basis. *Evans II* concluded: "[w]e find that the City's failure to establish a single order of payment of all judgment creditors did not violate equal protection. Therefore, the decision of the district court is REVERSED." 873 F.2d at 1018.

Following *Evans II*, on November 27, 1989, the City moved to vacate the 1984 consent decree pursuant to Fed.R.Civ. P. 60(b)(5), which states that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The district court initially granted the motion, but then it reversed itself because it believed the consent decree had also compromised due process claims that were unaffected by this Court's decisions. A divided panel of this Court agreed with the latter holding, 995 F.2d 1393, but its decision was vacated and reversed by the en banc decision in *Evans III*.

Judge Easterbrook's opinion for the plurality of the en banc Court did not rest on the proposition that the plaintiffs' claims were frivolous, or that the consent decree had somehow never existed. To the contrary, he stated squarely that "[t]he decree was properly supported when the district court entered the injunction in 1984." *Evans III*, 10 F.3d at 480. Once *Evans II* had been decided, however, the "substantial basis" in federal law for the consent decree evaporated, both under the Equal Protection clause and under the Due Process clause. This meant, in the language of Rule 60(b)(5), that it was "no longer equitable" that the consent decree should continue. Judge Ripple concurred, stating that "it is sufficient to conclude that this court's decision in [*Evans II*] changed the prevailing law to such a degree as to make further enforcement of the con-

sent decree by the district court inappropriate under the standards set forth by the Supreme Court in *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)." *Evans III,* 10 F.3d at 483.

Once again, the case returned to the district court. On June 29, 1994, in compliance with this Court's mandate, the court granted the City's motion to vacate the consent decree and reserved ruling on plaintiffs' motion for attorneys' fees under § 1988. On November 9, 1994, the court entered the order from which plaintiffs appeal, denying attorneys fees. In its order, the district court made it clear that it regarded the question as a close one:

> There can be no doubt that the plaintiff classes derived great benefit while the consent decree was in effect and that, to the extent the City continues to pay judgments in accordance with the procedures established by the vacated decree, judgment creditors of the City will continue to benefit indefinitely into the future. Nor is there any doubt that plaintiffs' counsel expended enormous amounts of time and energy in pursuing the claims which led to these results.
>
> However, while the matter is hardly free from doubt and will obviously be presented to the Court of Appeals for resolution, it appears to this court that the City is correct in its contention that, having ultimately lost the case, plaintiffs cannot be considered prevailing parties. *See Palmer v. City of Chicago,* 806 F.2d 1316, 1322–23 (7th Cir.1986).

True to the district court's prediction, both the Evans and the Balark plaintiffs promptly appealed to this Court.

## II

 Plaintiffs present two alternative theories in support of their claim for attorneys' fees under § 1988, either one of which would support an award. First, they assert that they were both in fact and in law "prevailing parties" during the period of time that the consent decree was in force. Second, they argue that they qualify under the "catalyst theory" for fees, because their case caused the City to act voluntarily in changing its payment practices and the City's action was not wholly gratuitous. The City's response boils down to a simple proposition: if, at the end of the day, plaintiffs cannot point to an extant injunction, consent decree, order requiring payment of damages, or other tangible evidence of victory, then they cannot be considered winners. Even more directly put, the City argues that if, at the time the fee petition is considered by the district court, plaintiffs have not ultimately prevailed, then fees should not be awarded under § 1988. Because we conclude that plaintiffs were indeed prevailing parties due to their success in obtaining the consent decree, we have no need here to address the alternate "catalyst" theory.

In order to decide this case, we must put ourselves back in the position the parties held from the time the consent decree was entered in 1984 until it was vacated in 1994. During that period, the decree was more than a simple agreement between the parties. It was, as the Supreme Court noted in *Rufo,* 502 U.S. at 378, 112 S.Ct. at 757, "an agreement that the parties desire and expect will be reflected in and be enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees." Quoting *Railway Employes v. Wright,* 364 U.S. 642, 650–651, 81 S.Ct. 368, 372–73, 5 L.Ed.2d 349 (1961). Like any other judicial decree, this one was entitled to respect; the parties had an obligation to comply with it even if they thought it was erroneous, see *Walker v. City of Birmingham,* 388 U.S. 307, 320–321, 87 S.Ct. 1824, 1831–32, 18 L.Ed.2d 1210 (1967), and violations were punishable by contempt, like violations of other court decrees. See *Green v. United States,* 356 U.S. 165, 169, 78 S.Ct. 632, 635, 2 L.Ed.2d 672 (1958); *Retired Chicago Police Association v. City of Chicago,* 76 F.3d 856, 870 (7th Cir.1996); *Association of Community Organizations for Reform Now (ACORN) v. Illinois State Board of Elections,* 75 F.3d 304, 306–307 (7th Cir. 1996). Also, as the Supreme Court underscored in *Rufo,* consent decrees are just as subject to Rule 60(b) as other judicial decrees.

To understand our result in this case, it is important to recognize that all final judgments, orders, and decrees are subject to the safety valve provided by Rule 60(b). The fact that a court may exercise an extraordinary power to relieve the parties of a judgment's consequences, either through a modification or a termination of the decree in question, does not make the judgment any less final. We have often noted, in orders affirming district court refusals to grant relief under Rule 60(b), how limited its scope is and how unusual the circumstances must be in order to justify relief. *Provident Savings Bank v. Popovich,* 71 F.3d 696, 698 (7th Cir.1995); *Dickerson v. Board of Education,* 32 F.3d 1114, 1116 (7th Cir.1994); *Harold Washington Party v. Cook County, Illinois Democratic Party,* 984 F.2d 875, 879 (7th Cir.1993). An order under Rule 60(b) does not in any way call into question the validity of the judgment or decree from the time of its entry up until the time of the 60(b) order. The 60(b) order operates prospectively only, as the language of the rule itself makes clear.

Rule 60(b) orders are thus distinguishable in a critical sense from revisions of orders or judgments during the process of a direct appeal. If a district court judgment is reversed on appeal, the effect of the appellate court ruling is that the judgment was never correct to begin with. If a judgment has been paid immediately, it must be refunded. This is why devices such as supersedeas bonds and injunctions or stays pending appeal exist: so that the parties can protect their respective positions while the fate of the district court judgment is still uncertain. In the case of final judgments embodying injunctive relief, the injunction governs the parties' behavior unless and until it either expires of its own force or relief under Rule 60(b) is granted. The same holds true for consent decrees. Sometimes decrees are rather short in duration, such as the 6 1/2 year consent decree entered in *United States v. Microsoft,* 56 F.3d 1448, 1452 (D.C.Cir. 1995), while in other cases they can last for decades. *See United States v. Eastman Kodak Co.,* 63 F.3d 95, 97 (2d Cir.1995) (decree lasted 73 years: from 1921 to 1994). The fact that the decree may eventually expire or may be modified or terminated pursuant to Rule 60(b) does not mean that it was not valid while it lasted.

With this in mind, we turn to the question whether these plaintiffs were "prevailing parties" for purposes of § 1988, and as such entitled to attorneys' fees. At an obvious level, as the district court recognized, plaintiffs qualify easily: they obtained a consent decree that was in force for ten years; the decree addressed precisely the concerns they had brought before the district court about the way in which the City was paying judgments; and the City changed its behavior, perhaps permanently. We must therefore consider whether anything exists that would defeat their ability to collect fees. The City raises a number of possibilities, which we discuss in turn: (1) the 1984 consent decree did not resolve all issues in the case, because the damages question was expressly reserved; (2) the ground on which this consent decree was eventually vacated is critical, because this Court concluded in *Evans II* that its legal ruling in *Evans I* had been in error, thus suggesting that the decree was void *ab initio;* and (3) this consent decree was in substance an interlocutory order, indistinguishable from others in more conventional litigation.

The City is of course correct to point out that the 1984 settlement did not resolve all issues in the case. As is often true, the plaintiff classes were seeking both prospective changes in the City's payment practices and damages for individual judgment creditor class members who had waited too long for satisfaction. Following *Evans I,* the consent decree settled the first type of claim and left the second for further proceedings. The Supreme Court has addressed the standard for determining when a party has "prevailed" in multiple issue cases on two occasions. In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court considered the case of patients in a state mental institution who had challenged six general types of practices. In five of those six areas, the district court found that the conditions violated the Constitution and it granted relief; in the sixth, plaintiffs were unsuccessful. Where the plaintiffs' various

claims arise out of a common core of facts and involve related legal theories, the most critical factor is the degree of success obtained. Importantly, the question of degree goes to the determination of the size of the fee, not to the eligibility for an award at all. Thus, *Hensley* made it clear that fees could and should be awarded under § 1988 in cases where plaintiffs prevail on some but not all claims. The Court reiterated this holding in *Texas State Teachers v. Garland Indep. School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), which rejected a requirement that the party have won on the "central issue" in the litigation and reconfirmed that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." 489 U.S. at 791–92, 109 S.Ct. at 1492–93 (internal quotations omitted). *See also Farrar v. Hobby,* 506 U.S. 103, 111–112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

*Garland* also reconfirmed the validity of fee awards for interim rulings in litigation, as long as those rulings reflect the party's success in establishing its entitlement to some relief on the merits. *Garland,* 489 U.S. at 790, 109 S.Ct. at 1492. As devices such as Fed.R.Civ.P. 54(b) reflect, it is quite possible that a district court might resolve some of the claims of some of the parties before it enters a final judgment. (District courts are never *required* to enter Rule 54(b) orders.) These kinds of interim rulings can confer "prevailing party" status on a civil rights plaintiff. In light of these decisions, the fact that further proceedings were required for the damages claims does not undermine plaintiffs' status as prevailing parties for the consent decree on injunctive issues.

Next, we consider whether the fact that the Rule 60(b)(5) relief was granted in part because of a change in the law of this very case compels a finding that plaintiffs did not prevail. The rule itself draws no distinction between relief due to changed facts as opposed to changes in law, except to disadvantage motions based upon newly discovered evidence by subjecting them to a one-year time limit. Rule 60(b)(5) singles out as one reason for relief the fact that "a prior judgment *upon which it is based* has been reversed or otherwise vacated," which indicates that changes in the law of the case may not be as unusual as the City would have us believe. The kind of change in law that led this Court to reconsider *Evans I* is not uncommon. In *Rufo,* the leading case on modifications of consent decrees under Rule 60(b)(5), the Supreme Court expressed concern about preserving flexibility in institutional reform litigation. Changed factual conditions might make compliance with a decree substantially more onerous, 502 U.S. at 383, 112 S.Ct. at 759, or "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent," *id.* at 388, 112 S.Ct. at 762. A decree could also be modified "if the parties had based their agreement on a misunderstanding of the governing law." *Id.* at 390, 112 S.Ct. at 763.

We therefore see nothing exceptional in the fact that the *Evans–Balark* consent decree was terminated following a decision of this Court that either applied a new legal standard (a more lenient "rational basis" test) to the City's conduct, or that clarified an earlier misunderstanding of the applicable law (if *Evans I* is better characterized as a simple mistake). Rule 60(b)(5) exists for precisely these situations, and it was properly invoked here.

Finally, we turn to the argument the City urges most strongly, which is that in substance we have a single unified proceeding that plaintiffs ultimately lost. Thus, it argues, this case is exactly like *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Palmer v. City of Chicago,* 806 F.2d 1316 (7th Cir.1986). In *Hewitt,* Justice Scalia posed the question whether "a party who litigates to judgment and loses on all of his claims can nonetheless be a 'prevailing party' for purposes of an award of attorney's fees," and unsurprisingly answered "no." 482 U.S. at 757, 763, 107 S.Ct. at 2677. *Palmer* was similar: in that case, the district court awarded interim attorney's fees to the plaintiffs for successfully obtaining a preliminary injunction, but after

this Court threw out the injunction on direct appeal, it was clear that they had not prevailed. This meant that the district court's order to the City to pay the fees had to be set aside as well. 806 F.2d at 1324.

If the City, instead of accepting the consent decree in 1984, had litigated and lost, and if the district court had then entered an injunction identical to the decree, and if the City had then taken an appeal to this Court from the entry of the injunction, and if that appeal had resulted in the functional equivalent of *Evans II,* then we agree that *Hewitt* and *Palmer* would provide the rule of law for this case, too. Nonetheless, this string of "ifs" is not what happened. Instead, in an atmosphere of legal uncertainty both about the Due Process claim and about the extent of its obligations under the Equal Protection clause, the City reasonably enough decided that a compromise was preferable to litigation. It signed the consent decree, and, for the reasons we noted at the beginning of this opinion, the decree became the equivalent of a judicial decree once the district court entered it. It is this fact—the fact of the conclusion of this portion of the litigation through the entry of a consent decree—that distinguishes the present case from others in which parties that "lose" on all their claims seek fees.

Far from losing on all their claims, plaintiffs worked for and won a consent decree that remained in force for a decade. The City invites us to take an *ex post* view of all consent decrees (and injunctions, we suppose), and to deny attorney's fees whenever subsequent events cause a court to set the decree aside in whole or in part under Rule 60(b). Such a rule would seriously undermine § 1988 in consent decree cases, however, and we decline to take such a step. Imagine a consent decree entered in 1986 that is set aside for a combination of changed law and equities in 1996. Assume also that the district court acted reasonably promptly, and issued an order awarding fees related to the 1986 decree in 1987. Under the rule the City proposes, must the attorneys refund the fees in 1996? How can one say that the plaintiffs did not prevail when their decree governed the parties' behavior for ten years,

and the termination is prospective only? The only possible perspective from which the entitlement to fees can be considered is at the time the final judgment determining who prevails is entered (taking into account any appeals in accordance with *Palmer*).

From that perspective, these plaintiffs are entitled to their fees. It is important to note that both sets of plaintiffs make clear in their briefs in this Court that the fee request pertains only to time spent from November 4, 1977, to the time when the consent decree was entered, on May 31, 1984, and perhaps some limited time spent monitoring the decree during its existence. It is also interesting that the City is not seeking to recover the $60,000 interim fee award that has already been paid to the Balark plaintiffs' lawyers, although the logic of its argument would seem to compel just such an action on behalf of the taxpayers of Chicago. Finally, the City concedes in its brief that "had plaintiffs chosen to petition for fees after entry of the consent decree, citing that achievement as a basis for a fee award, the district court may well have granted them fees under *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)." The City's only error is in assuming that the fee petition is different, as a matter of law, because the district court considered it after the decree had been terminated under Rule 60(b)(5). It is not, and plaintiffs are entitled to the fees that relate to their success in obtaining a ten-year consent decree.

The judgment of the district court is RE-VERSED and the case is remanded for further proceedings consistent with this opinion.