AMERICAN TRAIN DISPATCHERS DE-
PARTMENT OF THE INTERNATION-
AL BROTHERHOOD OF LOCOMO-
TIVE ENGINEERS, Plaintiff–Appellee,

v.

FORT SMITH RAILROAD COMPANY,
Defendant–Appellant.

No. 96–2735.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1996.

Decided July 11, 1997.

David Stuckel, Harvey & Stuckel, Peoria, IL, Michael S. Wolly (argued), William W. Thompson, II, Lauren F. Singer, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, Washington, DC, for Plaintiff–Appellee.

Daniel A. LaKemper (argued), Peoria, IL, for Defendant–Appellant.

Frank W. Hunger, Office of the United States Attorney General, Washington, DC, William Kanter, Sandra Wien Simon (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, Frances C. Hulin, Office of the United States Attorney, Springfield, IL, for Amicus Curiae.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

■■ A strike by even a small part of our nation's railroad workers could bring much of interstate commerce to a halt and disrupt the daily lives of millions of Americans. This risk of disruption brought about the enactment of the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, (RLA or Act). The Act's main purpose is to "avoid any interruption to commerce or to the operation of any carrier engaged therein." 45 U.S.C. § 151a. The RLA works not by controlling the types of independent action employers and unions can take after bargaining has failed (*e.g.*, strikes, lockouts). Instead, the RLA strives to prevent interruptions of interstate commerce by creating a mediation structure which requires the parties to "exert every reasonable effort to make and maintain agreements . . . and to settle all disputes . . . to avoid any interruption to commerce." 45 U.S.C. § 152, First. The obligation that parties "exert every reasonable effort" has been described as the "heart" of the RLA. *Bd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377–78, 89 S.Ct. 1109, 1114–15, 22 L.Ed.2d 344 (1969). The obligation is a legal one, given shape by the National Mediation Board's (NMB) recommendations and "enforceable by whatever appropriate means might be developed on a case-by-case basis." *Chicago & N.W.R.R. Co. v. United Transp. Union*, 402 U.S. 570, 577, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1971). The NMB is free to "experiment[ ] with any mediation device that can fairly be said to be designed to settle a dispute without a strike and does not independently offend other laws." *Int'l Ass'n of Machinists v. Nat'l Mediation Bd.*, 930 F.2d 45, 48 (D.C.Cir.1991). Any party to a dispute may invoke the NMB when the dispute concerns changes in rates of pay, rules or working conditions; the NMB may also proffer its services without a request from a party. 45 U.S.C. § 155, First.

Here, the Brotherhood of Locomotive Engineers (BLE), representing the locomotive engineers, conductor/brakemen and carmen employed by Fort Smith Railroad Co. (Railroad), invoked the NMB on March 28, 1995. At that point, negotiations had been ongoing since October 11, 1994. The NMB assigned

Robert Martin to perform mediation, and sessions were held on May 2, August 15 and November 8 of 1995 and on January 30, 1996. All of these sessions were held at the Railroad's headquarters in Peoria, Illinois. On February 8, 1996, Stephen Crable, the NMB's Chief of Staff wrote the following letter to the parties:

Mediator Robert B. Martin will resume mediation involving the Fort Smith Railroad Company and the BLE–ATDA Division, Case Nos. A–12715, A–12716 and A–12717, at the NMB's office in Washington, DC, at 10:00 a.m. on February 28 and 29, 1996. Please advise who will represent you and provide local telephone and fax numbers.

In immediate response the Railroad wrote: "we cannot agree to a meeting in Washington, D.C. We are, however, agreeable to meeting on February 28, or March 1 (Tuesdays and Thursdays are bad days for us), at a 'neutral' site. I have proposed Springfield, Illinois, since that is where Mr. Martin is located.... [W]e would also agree to St. Louis." The NMB acceded to the Railroad's objections and held the mediation session in St. Louis on February 28, 1996. Unfortunately, that session, like those before it, failed to result in a resolution.

The next mediation session was again scheduled to take place in Washington D.C., on April 24 and 25, 1996. And again, the Railroad objected to the site:

[W]e do not feel that Washington, D.C. is an appropriate site. FSR's office is in Peoria, Illinois, and its operations are in Fort Smith, Arkansas. Washington is a very long way from both of those places.

Secondly, FSR presented its final offer to the Union during our recent bargaining session in St. Louis. My notes indicate that Mr. Volz said he was not going to recommend the contract....

You indicated to me this morning that you felt the Union was rejecting the proposal. Assuming that the union is unwilling to accept our final proposal, because it does not include seniority, I think we all agreed in St. Louis that these negotiations are at impasse....

....

... Another bargaining session is not likely to be productive at this time.

In summary, FSR believes these negotiations are at impasse, and, in any event, FSR is not agreeable to holding any negotiating sessions in Washington, D.C.

This letter obviously had an effect on the Union since only six days later it offered to drop its demands for seniority, overtime and the length of the agreement term. The Railroad, however, rejected the Union's offer, objecting to the yearly salary increase, bereavement leave and back pay. The Railroad reiterated its request that Robert Martin declare an impasse and release the parties from mediation. A last communication from the NMB read as follows:

This is to advise you that mediation sessions scheduled for April 24 and 25, 1996, at the NMB offices, Washington, DC have been canceled because of carrier refusal to attend. Consistent with the Board's obligation under the Railway Labor Act to make its best efforts to assist the parties in making agreements, the mediator has determined that convening the parties in Washington, DC will further this purpose. Please advise me by no later than April 25, 1996 of four consecutive days in April or May in which you will be available to meet with mediator Martin.

No change in the parties' positions regarding the place to meet was forthcoming.

The Union sought both a temporary and a permanent injunction enjoining the Railroad from refusing to negotiate when and where the NMB recommended. The district court granted both injunctions after a consolidated hearing and trial. The Railroad now appeals, arguing that the district court improperly consolidated the hearing and trial, and erroneously issued both the temporary and permanent injunctions. We affirm.

I. Consolidated Hearing and Trial

The district court consolidated the hearing on the preliminary injunction and the trial on the permanent injunction shortly after the hearing had begun. The court justified consolidation on the grounds that the dispute encompassed only one factual issue—

whether the NMB had issued a directive that the parties meet to negotiate in Washington, D.C.—leaving only legal issues requiring no further explication in a second proceeding. Under Federal Rule of Civil Procedure 65(a)(2), the hearing for a preliminary injunction can be consolidated with the trial on the merits "[b]efore or after the commencement of the hearing ... for a preliminary injunction." Whether or not to consolidate the hearing with the trial is within the district court's discretion. *See Paris v. United States Dep't of Hous. & Urban Dev.,* 713 F.2d 1341, 1345 (7th Cir.1983). The district court must provide "clear and unambiguous notice ... before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.,* 463 F.2d 1055, 1057 (7th Cir. 1972). Because different standards of proof may apply in the hearing than in the trial, parties must be given a clear chance to object or to propose special procedures for the consolidation. *Id.*

At the start of the hearing on the preliminary injunction the district court informed the parties that it was of the opinion that the dispute was purely legal and that holding two separate proceedings (one for the preliminary injunction and one for the permanent injunction) would be a waste of the court's time. The Railroad objected on the grounds that it had not had enough time to prepare arguments in opposition to the injunction, but conceded that the dispute involved at most two questions: (1) whether the NMB had issued a directive or order that it wanted the parties to meet in Washington, D.C. and (2) whether such a move could be mandated by the NMB or whether the location of negotiations was itself a subject for mediation between the parties.

■ We agree with the district court that this case involves only one legal issue and was thus ripe for final determination. The district court did not abuse its discretion in consolidating the hearing and the trial.

Nor were the parties denied notice or an opportunity to present their cases in full. All evidence submitted by the parties was admitted and considered by the district court. More importantly, the district court recognized that the one factual issue (whether the NMB directed the parties to meet in Washington, D.C.) was easily resolved. The NMB is not endowed with powers of enforcement but is expected to act as a referee, if a rather free-wheeling and powerful referee. *See Int'l Ass'n of Machinists,* 930 F.2d at 48. Nevertheless, as a referee the NMB must observe the amenities in "requesting" certain actions; hence the Board's diffident language: "the mediator has determined that convening the parties in Washington, DC will further [the mediation]." However, 45 U.S.C. § 152, First endows the NMB's words with the force of law. The district court therefore found that the NMB[1] did direct the parties to meet in Washington, D.C., and the only question remaining was whether the Railroad must accede to the NMB's suggestion. It was appropriate for the district court to preserve judicial resources by consolidating the hearing and the trial.

## II. Preliminary & Permanent Injunctions

■ Both the preliminary and the permanent injunction turn on one issue: whether the Railroad violated the RLA by refusing to attend the NMB-called negotiation sessions in Washington, D.C. The parties' obligation to "exert every reasonable effort" is given shape by the recommendations of the NMB. 45 U.S.C. § 152, First. As noted, the NMB acts as a referee. "The Mediation Board makes no 'order.' ... The function of the Board under § 2, Ninth is more the function of a referee. To this decision of the referee Congress has added a command enforceable by judicial decree. But the 'command' is that 'of the statute, not of the Board.'" *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.,* 320 U.S. 297, 304, 64 S.Ct. 95, 98, 88 L.Ed. 61 (1943) (interpreting the Board's power to determine Union representation). The issue here is whether a pro-

---

1. The Railroad argues that the correspondence from the NMB's Chief of Staff expressing the mediator's recommendations are not communications from the NMB itself. This is a specious argument since the NMB is "authorized by its order to assign, or refer, any portion of its work, ... to an individual member of the Board or to an employee." 45 U.S.C. § 154, Fourth.

cedural determination by the Board (here involving the location for meeting) is enforceable in court. In this connection, our authority to review the actions of the NMB is "extraordinarily limited." *Local 808 v. Nat'l Mediation Bd.*, 888 F.2d 1428, 1433 (D.C.Cir. 1989); *Prof'l Cabin Crew Ass'n v. Nat'l Mediation Bd.*, 872 F.2d 456, 459 (D.C.Cir.1989). We will intervene in the activities of the NMB only upon a showing of "patent official bad faith." *Int'l Ass'n of Machinists*, 930 F.2d at 48 (citing *Local 808, Bldg. Maintenance Serv. & R.R. Workers v. Nat'l Mediation Bd.*, 888 F.2d 1428, 1434 (D.C.Cir.1990)). But while our jurisdiction to review Board decisions is limited, our jurisdiction to enforce provisions of the Act is not. *See Air Line Pilots Ass'n Int'l v. Transamerica Airlines, Inc.*, 817 F.2d 510, 513 (9th Cir.1987). And, of course, we do not closely examine what might be the Board's rationale for the sort of procedural decision made here. The D.C. Circuit has emphasized the deference to be accorded by courts to the NMB:

> The members of the Mediation Board are no more to be called to the courthouse to explain their undisclosed reasons for action than the members of a legislature. The Mediation Board is entitled to as strong a presumption as the legislature, that if any state of facts might be supposed that would support its action, those facts must be presumed to exist.
>
> . . . .
>
> It may well be that the likelihood of successful mediation is marginal. That success of settlement may lie in the realm of possibility, rather than confident prediction, does not negative the good faith and validity of the Board's effort. The legislature provided procedures purposefully drawn out, and the Board's process may draw on them even to the point that the parties deem "almost interminable."

*Int'l Ass'n of Machinists v. Nat'l Mediation Bd.*, 425 F.2d 527, 540–41 (D.C.Cir.1970). Whatever the NMB's reasons for choosing Washington, D.C., we find no evidence of "patent official bad faith." *Int'l Ass'n of*

*Machinists*, 930 F.2d at 48. Nor does the choice of Washington, D.C. put attendance at the meeting beyond the Railroad's obligation to exert every reasonable effort. The Board is allowed to employ coercive techniques to bring the parties to conciliation. See *Id.* at 47.

If the Railroad could refuse to attend mediation sessions called by the NMB on the basis of location, the Railroad could in effect refuse to continue negotiating. The NMB's primary resource, the ability to force continuing negotiations almost interminably, would be thwarted. We therefore affirm the district court's grant of a permanent injunction.[2]

The injunction is accordingly

AFFIRMED.

---

**2.** We decline to review the district court's analysis regarding the issuance of the preliminary injunction as this matter is moot.