# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-4294

BELINDA DUPUY,
PILAR BERMAN,
NORMAN BERMAN, et al.,

*Plaintiffs-Appellees*,

*v.*

BRYAN SAMUELS, Director,
Illinois Department of Children
and Family Services,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 4199—**Rebecca R. Pallmeyer**, *Judge.*

_____

ARGUED JUNE 9, 2005—DECIDED SEPTEMBER 9, 2005

_____

Before BAUER, RIPPLE and MANION, *Circuit Judges*.

RIPPLE, *Circuit Judge.* The plaintiffs brought this action under 42 U.S.C. § 1983, on behalf of themselves and a class of similarly situated individuals, against the Director ("Director") of Illinois' Department of Children and Family Services ("DCFS") for due process violations. After the plaintiffs secured a preliminary injunction against the Director, they sought an interim award of attorneys' fees.

The district court granted the plaintiffs attorneys' fees and costs. For the reasons set forth in the following opinion, we now reverse the district court's award of attorneys' fees.

# I

# BACKGROUND

## A. Facts

A more thorough rendition of the facts underlying this case is available in our opinion addressing the merits of the district court's preliminary injunction. *See Dupuy v. Samuels* (*"Dupuy III"*), 397 F.3d 493 (7th Cir. 2005). For the purposes of this opinion, the following description shall suffice.

The plaintiffs are child-care workers and foster parents who had been indicated, in reports maintained on DCFS' State Central Register ("Central Register"), as perpetrators of child abuse or neglect. They brought this suit against the Director of DCFS on behalf of themselves and other similarly situated individuals. The plaintiffs sought injunctive relief on the ground that DCFS procedures for investigating and reporting allegations deprived them of due process of law. *See* 42 U.S.C. § 1983.

The district court granted the plaintiffs' request for a preliminary injunction. *See Dupuy v. McDonald* (*"Dupuy I"*), 141 F. Supp. 2d 1090 (N.D. Ill. 2001). In *Dupuy I*, the district court found that a number of the DCFS policies that the plaintiffs had challenged were "not constitutionally adequate." *Id.* at 1134. However, rather than enter specific relief, the court afforded the parties sixty days in which to develop constitutionally adequate procedures.

The parties later negotiated changes to DCFS policies in court-mediated sessions. At the same time, DCFS itself also

drafted new procedures for assessing the credibility and relevancy of the information obtained during an investigation of suspected child abuse. Specifically, the new draft procedures required DCFS employees to consider all evidence, both inculpatory and exculpatory, in an investigation into a suspected incident of child abuse.

After this process was completed, the district court issued an order directing specific relief and resolving the remaining disputes between the parties. R.443. With respect to the standard for assessing evidence of suspected child abuse, the district court found DCFS' new draft policies to be a salutary improvement and directed DCFS to continue weighing all evidence in determining whether a report should be indicated for child abuse.

The district court also found that due process required some form of formal appeals process before an indicated report was recorded on the Central Register. Therefore, the court ordered a limited telephonic administrative review ("the administrative conference") prior to the entry on the Central Registry of any indicated finding of child abuse.

The district court also ordered more rapid post-deprivation hearings for child-care workers; specifically, the court ordered that child-care workers who timely requested an appeal would be entitled to a hearing and a final decision within thirty-five days. The district court specified which members of the plaintiffs' class would be entitled to the administrative conference and the expedited hearings.

The parties appealed, and this court affirmed in part and reversed in part the district court's injunction. *See Dupuy III*, 397 F.3d at 515.

**B. District Court Fee Proceedings**

In February 2004, the plaintiffs filed a petition for attorneys' fees. *See* 42 U.S.C. § 1988. Specifically, they asked for an award of $3,228,673, an amount equal to the fees and expenses that had been incurred through March 2002.

In an order issued October 21, 2004 (the "fee order" or "district court's fee order"), the district court granted in part and denied in part the plaintiffs' petition for fees. The court also ordered the Director to make an interim payment of $1,000,000. The court noted that the plaintiffs had "w[o]n a judicial order granting them relief," R.584 at 3— relief which the court described as "substantial," "effectively permanent" and largely "unchallenged on appeal," *id.* at 5. Thus, because the plaintiffs were "prevailing part[ies]" as described by § 1988, the court determined that a fee award was appropriate in this case. The court also concluded that neither the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), nor this court's decisions in *Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir. 2004), and *Sonii v. General Electric Co.*, 359 F.3d 448 (7th Cir. 2004), barred an interim award of attorneys' fees in this case.

The court did not award attorneys' fees in the entire amount which the plaintiffs had requested. The district court noted that local court rules establish a procedure for parties to share information with the goals of developing a "joint statement" concerning the amount of fees sought and identifying disputes between the parties related to fees. N.D. Ill. R. 54.3. However, because the Local Rule 54.3 process would require significant efforts both from the court and from the parties, and because the litigation had not reached a final conclusion, the court decided that it would

award a reduced amount of the fees rather than engage in the Local Rule 54.3 process. Therefore, the court awarded the plaintiffs attorneys' fees in the amount of $1,000,000. The Director appealed to this court.

## II

## ANALYSIS

### A. Jurisdiction

We first must resolve the question of our jurisdiction to hear this appeal. An interim award of attorneys' fees generally is interlocutory and not appealable until the conclusion of the underlying suit on the merits. *See Estate of Drayton v. Nelson*, 53 F.3d 165, 166-67 (7th Cir. 1994). There is, however, one exception to this rule: An interim award of fees may be appealed if "the party against whom the award is made will not be able to get his money back if he prevails at the end of the case and the award is vacated then." *Id.* at 167.

The plaintiffs assert that the exception is inapplicable here and therefore that this court lacks jurisdiction over this appeal. From the plaintiffs' submissions to this court before oral argument, it was unclear whether they actually claimed that they would be able to repay the fee award if the Director ultimately prevailed in the underlying suit and the award were vacated. *See, e.g.*, Appellees' Reply Br. at 3 ("There is no non-repayment risk—much less the type of substantial risk the case law refers to—because there is no reversal risk. And there is no reversal risk because the Director's appeal, on its merits, is frivolous . . . ."). At oral argument, it became clear that there is indeed a risk that the plaintiffs and their counsel will lack the financial wherewithal to repay the award should it be reversed

sometime in the future. However, the plaintiffs continued to assert at oral argument that there is no risk of non-repayment because it is unlikely repayment ever will be ordered. In the plaintiffs' view, the chances are quite slim that the Director will prevail on the merits, thus requiring them to repay the fee award.

The plaintiffs' theory does not reflect accurately the reasoning behind our cases concerning the appealability of an interim fee award. "Our court has . . . [been] careful to emphasize that appeal depends on a demonstration that the money, once disbursed, is effectively beyond recall in the event of reversal at the end of the case." *Constr. Indus. Ret. Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 468 (7th Cir. 1993); *see also Palmer v. City of Chicago*, 806 F.2d 1316, 1319 (7th Cir. 1986) (finding jurisdiction over appeal of interim fee order when members of class to whom fee was paid "might be insolvent" or "might have disappeared" by the end of litigation), *cert. denied*, 481 U.S. 1049 (1987).

It is clear from our cases that it is the future financial solvency of the party to whom fees are being awarded that matters in the determination whether jurisdiction exists. The parties have not brought to our attention any case explicitly finding a lack of jurisdiction on the theory that the party against whom interim fees are awarded has a very low chance of ultimately prevailing on the merits. Thus, because the plaintiffs have admitted that there is a risk they would be unable to repay the fee award in the future if so required, we find that we have jurisdiction over this appeal.

## B. The Plaintiffs' Eligibility for Fees

### 1. Standard of Review

When reviewing attorneys' fees under § 1988, we review de novo the district court's "purely legal conclusions." *Palmetto Props., Inc. v. County of DuPage*, 375 F.3d 542, 547 (7th Cir. 2004), *cert. denied*, 125 S. Ct. 965 (2005). Thus, because in this case the Director has challenged whether the district court incorrectly applied the definition of a "prevailing party," we shall review the district court's conclusions de novo. *See id.* We review "factual matters underlying the fee award, such as the fee amount and a party's ultimate litigation goals," for clear error. *Id.*

### 2. 42 U.S.C. § 1988 and "Prevailing Party" Status

In the United States, the parties to a lawsuit generally are required to bear their own costs. *Buckhannon*, 532 U.S. at 602. However, in 42 U.S.C. § 1988, Congress has vested courts with "discretion" to award "a reasonable attorney's fee" to a "prevailing party" other than the United States "in any action or proceeding to enforce" a number of civil rights statutes, including 42 U.S.C. § 1983. 42 U.S.C. § 1988. Thus, "[a] plaintiff must be a prevailing party to recover an attorney's fee under § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Supreme Court has given us guidance on what it means to prevail for the purposes of § 1988. To be considered a prevailing party, one must have "prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980). Thus, the Court has held that a litigant is a prevailing party when he has obtained a judgment on the merits, a settlement agreement enforced through a consent decree or some other "judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605; *see also Palmetto Props., Inc.*, 375

F.3d at 548. "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to the resolution of a dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.* ("*Garland*"), 489 U.S. 782, 792 (1989).

Of particular import to this case is the question of at what point before the entry of final judgment the "judicially sanctioned change" in the parties' relationship can be said to have taken place, thus making an award of attorneys' fees appropriate. Certainly, as we have explained, "[a] district court has the power to award fees before the entry of a final judgment." *Palmer*, 806 F.2d at 1320. According to the Supreme Court, "[i]t is evident . . . that Congress contemplated the award of fees *pendente lite* in some cases." *Hanrahan*, 446 U.S. at 757. However, the Court has emphasized that "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims." *Id.* at 758. In other words, "[a] prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, *either pendente lite* or at the conclusion of the litigation." *Garland*, 489 U.S. at 791 (emphasis added). We have interpreted the Supreme Court's decisions on interim fee awards to mean that, "[o]nce a plaintiff obtains substantive relief that is not defeasible by further proceedings, he can seek interim fees and the district court has the power to award them." *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir. 1990).

### 3. This Court's Precedents

Several of our cases provide examples of the circumstances in which an interim award of attorneys' fees is

appropriate or in which an attorneys' fee award should be upheld despite a lack of a final judgment in a case.

### a.

In *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000), we upheld an award of attorneys' fees that had been made based only on a preliminary injunction. The plaintiffs in *Young* had obtained a preliminary injunction against the City of Chicago. The plaintiffs alleged that the City had violated their First Amendment rights by establishing a security perimeter excluding protesters from the areas around the site of the 1996 Democratic National Convention. The City's appeal, taken after the conclusion of the convention, was dismissed as moot (the injunction applied only to that specific convention), and the merits of the case never were decided. After this court had dismissed the City's appeal, the plaintiffs moved for, and were awarded, attorneys' fees pursuant to § 1988. We upheld the award despite the fact that a final judgment on the merits had not been entered. We reasoned that "[a] defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter a plaintiff's status as a prevailing party." *Id.* at 1000-01. In *Young*, the litigation manifestly had come to an end *despite* the lack of a final judgment on the merits. Furthermore, our decision in *Young* clearly was connected closely to our impression that the City deliberately had "waited until the convention was over" in order to moot the case "before a definitive determination of its merits." *Id.* at 1000.

### b.

In *Palmetto Properties*, 375 F.3d 542, we upheld an award of attorneys' fees that had been made in a case in which no final judgment had been entered. The plaintiffs sued

DuPage County, Illinois, on the basis of a local ordinance that the plaintiffs claimed violated the First Amendment by restricting possible locations for their planned adult-entertainment nightclub. The district court granted partial summary judgment for the plaintiffs, declaring a part of the challenged ordinance unconstitutional. After summary judgment, the County offered to repeal the unconstitutional portions of its ordinance, and the district court continued the case to allow the repeal to take place, ultimately dismissing the case as moot.

Following dismissal, the plaintiffs sought attorneys' fees pursuant to § 1988. We upheld the district court's award of attorneys' fees despite the fact that an entry of final judgment had not been made. We explained:

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case—a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance—Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship. . . . In this case, not only did the district court make a substantive determination as to essentially all the constitutional claims save one, . . . the County repealed the ordinance only *after* that determination had been made and presumably *because of it*. . . . [T]heir action is most persuasively construed as involuntary—indeed exhibiting judicial imprimatur.

*Id.* at 549-50 (emphasis in original). Thus, in *Palmetto Properties*, attorneys' fees were appropriate because the court had reached a judgment on the merits as to some of the plaintiffs' claims, even though the procedural step of entering final judgment had not been used.

c.

In *Balark v. City of Chicago*, 81 F.3d 658 (7th Cir. 1996), we affirmed an award of attorneys' fees to parties who had done the work of obtaining and maintaining a consent decree, even after the decree ultimately was vacated. In the litigation that led to *Balark*, the district court had granted the plaintiffs partial summary judgment on their claims and had enjoined the City from continuing its practice of paying tort judgments of $1000 or less immediately while delaying payment of larger tort judgments for several years. This court substantially affirmed the district court's grant of summary judgment in *Evans v. City of Chicago* ("*Evans I*"), 689 F.2d 1286 (7th Cir. 1982), *overruled by Evans v. City of Chicago* ("*Evans II*"), 873 F.2d 1007 (7th Cir. 1989). Following our *Evans I* decision, the City and the plaintiffs negotiated a consent decree requiring the City to pay all judgments promptly and in the order in which they were entered. As events unfolded, a series of appeals caused this court to question, reconsider and eventually overrule *Evans I.* Ultimately, we determined that the consent decree could not stand. *See Evans v. City of Chicago* ("*Evans III*"), 10 F.3d 474 (7th Cir. 1993). Following *Evans III*, the district court denied the plaintiffs' motion for attorneys' fees pursuant to § 1988.

We overruled *Evans I* on the ground that the plaintiffs had been prevailing parties within the meaning of the fee-shifting statute. Even though the protracted litigation had ended unfavorably to the plaintiffs, the City had signed the consent decree (which remained in place for a decade) and "the decree became the equivalent of a judicial decree once the district court entered it." *Balark*, 81 F.3d at 665. Thus, the suit had been subject to a "conclusion of [a] portion of the litigation through the entry of a consent decree." *Id.* At the time we decided the plaintiffs' eligibility for fees in *Balark*, the Supreme Court had established that a

party could attain prevailing party status through a consent decree and settlement. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980).[1]

The court declined to take an "*ex post* view of all consent decrees" and stated that it would not "deny attorney's fees whenever subsequent events cause a court to set [a] decree aside." *Balark*, 81 F.3d at 665. Indeed, we emphasized that "[t]he only possible perspective from which the entitlement to fees can be considered is at the time the final judgment determining who prevails is entered." *Id.* Thus, in *Balark*, the plaintiffs were entitled to an award of fees because they had obtained a consent decree that was the equivalent, for § 1988 purposes, of a judgment on the merits.

With the foregoing principles in mind, we now shall consider whether the plaintiffs in this case appropriately may be termed prevailing parties eligible for an award of attorneys' fees.

### 4. Application to this Case

The Director contends that the preliminary injunction was not a final determination on the merits of any claims. He also submits that, because it is not clear what the district court's ultimate decision will be, it will be impossible to determine prevailing party status until the district court has entered final relief. The plaintiffs, on the other hand, assert that *Dupuy I* constituted a determination on the merits of at least some of their claims. *See* Appellees' Br. at 26 ("[T]he

---

[1] This court also noted in *Balark* that "fee awards for interim rulings in litigation" are valid "as long as those rulings reflect the party's success in establishing its entitlement to some relief on the merits." 81 F.3d 658, 664 (7th Cir. 1996).

district court made unqualified merits rulings, <u>not</u> preliminary relief resting on the provisional assessment of 'reasonable likelihood of success on the merits.' ") (emphasis in original). For instance, they contend that, by noting its "find[ing] that certain . . . current DCFS policies and procedures do in fact deprive class members of constitutionally-protected rights," *Dupuy I*, 141 F. Supp. 2d at 1092, the district court made a determination of the merits of their due process claim. The defendants respond that there has been no determination on the merits because the district court never consolidated the hearing on the preliminary injunction with the trial on the merits. *See* Fed. R. Civ. P. 65(a)(2).[2]

Although certain language in the district court's fee order can be read to suggest that the court had adopted a particular view of the merits of the case, when the writings of the district court are read in their totality, we cannot say that

---

[2] It is true that Federal Rule of Civil Procedure 65(a)(2) permits a court to order, "[b]efore or after the commencement of the hearing of an application for a preliminary injunction," the consolidation of "the trial of the action on the merits . . . with the hearing of the application." The decision to consolidate the hearing on the preliminary injunction with the trial on the merits is within a district court's discretion. *American Train Dispatchers Dep't of the Int'l Bhd. of Locomotive Eng'rs v. Fort Smith R.R. Co.*, 121 F.3d 267, 270 (7th Cir. 1997). However, the district court is required to provide the parties with "clear and unambiguous notice" of its intent to consolidate the hearing and the trial either before the hearing starts or at a time that will still allow the parties an opportunity fully to present their cases. *Id.* (internal quotation omitted). The Director contends that the district court in this case never provided such notice and the plaintiffs do not contest that submission. Thus, we do not think that a Rule 65(a)(2) consolidation occurred.

they make it sufficiently clear that the court had resolved any aspect of the case in a sufficiently "concrete and irreversible" way as to warrant an interim attorneys' fee award. In the fee award, the district court indicated that "[p]laintiffs have . . . made substantial efforts to reach the merits of the disputes between the parties, [and] have presented testimony and evidence over several days at two lengthy hearings that functioned as bench trials." R.584 at 5. The court also expressed its belief that there would be no "lengthy further proceedings before entry of a final judgment."[3] *Id.* Notably, however, the court stopped significantly short of deciding definitively any aspect of the case. Although the district court expressed the expectation that the remaining proceedings would not be lengthy, it also made it clear that there was still work to be done.

An examination of the district court's earlier writings, when it granted the preliminary injunction, makes even more clear that definitive resolution of the chief aspects of the case had not been attained. The court worked extensively with the parties in a commendable and painstaking process to craft the terms of the preliminary injunction. At the same time, it never went so far as to decide on the terms of the definitive remedy. For instance, referring to the pre-deprivation administrative conference, the court expressed a willingness "to revisit the matter if history proves the conferences ineffective at addressing the error rate which troubled the court." R.443 at 12. In dealing with the matter

---

[3] Even when consolidation under Rule 65(a)(2) is not ordered, "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial."

of delay, the court indicated that it was "unwilling at this time to impose Plaintiffs' proposed remedy of expungement." *Id.* at 16. Most importantly, referring to the plaintiffs' additional requests for relief, the court denied without prejudice the proposals "[a]bsent agreement between the parties or a fully developed record." *Id.* at 18.

In our own review of the preliminary injunction proceedings, we took note of the still unstable state of the record and of the relief when we noted that the suit was at a "preliminary stage of the litigation." *Dupuy III*, 397 F.3d at 506. Indeed, our own review of the preliminary injunction left work for the district court. *See id.* at 512 (extending preliminary injunction to provide pre-deprivation process to "career entrants," directing district court to modify injunction accordingly and instructing district court to define more precisely the class of persons who qualify as "career entrants"). Our decision certainly clarified the governing principles of law and gave the district court guidance on the legal framework in which further proceedings ought to take place. In that respect, our opinion, combined with the work of the district court that we approve, perhaps can be said to have settled a "central issue" of law. *See Garland*, 489 U.S. at 790. We did not, however, deal with this case in terms that made the plaintiffs a "prevailing party" as that term is employed in attorneys' fee awards litigation.

We must conclude, therefore, that the district court's award of attorneys' fees, even on an interim basis, was premature. We pause to point out, however, that our decision today does not establish a hard and fast rule that a preliminary injunction can never be an adequate predicate for such an interim award. Indeed, in *Young*, we upheld an award granted to a party that had obtained only a preliminary injunction. That case, however, was significantly

different from this case. In *Young*, the plaintiffs had obtained a preliminary injunction, and the case was mooted *before* they sought attorneys' fees. The relief the plaintiffs had obtained through the preliminary injunction therefore was not defeasible for the same reason that the case was moot: The sole event covered by the injunction, the 1996 Democratic National Convention, had ended. In the present case, by contrast, at the time the district court issued the fee order, it explicitly contemplated further proceedings on the merits of the plaintiffs' claims.

We have recognized that there is a difference, for the purpose of awarding attorneys' fees under § 1988, between cases in which a preliminary injunction is vacated as moot and other cases involving a preliminary injunction. In fact, in *Palmer*, we rejected the idea that any "plaintiff who has won a preliminary injunction has won something even if the injunction is reversed" and noted that "constrain[ing] the defendants' conduct until [the injunction] is reversed" is not sufficient to confer prevailing status on a party. *Palmer*, 806 F.2d at 1321-22.[4]

---

[4] Our circuit's law on the mootness issue is hardly an outlier among the federal circuit courts. We note that, in cases with circumstances similar to those in *Young*, several of our sister circuits have held that attorneys' fees may be awarded after a party has obtained a preliminary injunction and the case subsequently has become moot. *See, e.g.*, *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005); *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002); *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987).

In *Select Milk Producers*, the District of Columbia Circuit upheld the district court's award of attorneys' fees that had been made after the parties stipulated to the dismissal of the case as moot.

(continued...)

---

[4] (...continued)

Although the fee award had been made under the attorneys' fees provision of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), the court applied the reasoning set out by the Supreme Court in *Buckhannon*. The court affirmed the award because the injunction had brought about a court-ordered change in the parties' relationship that was "concrete and irreversible." *Id.* at 946.

In *Watson*, the Ninth Circuit stated that "a preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*." 300 F.3d at 1096. However, it must be noted that *Watson* involved a different procedural context than the one in the present case. In *Watson*, the plaintiff had obtained a preliminary injunction in a suit against the County of Riverside, California. The County was granted summary judgment on all its other claims except one for a permanent injunction. Before the propriety of a permanent injunction was decided, the case became moot. Subsequent to the case becoming moot, the plaintiff applied for and was awarded attorneys' fees. The Ninth Circuit noted the importance to its decision of the fact that, although "Watson's claim for permanent injunctive relief was not decided on the merits," the "preliminary injunction was not dissolved for lack of entitlement. Rather, Watson's claim for permanent injunction was rendered moot when his employment termination hearing was over, after the preliminary injunction had done its job." *Id.*

As well, the Eleventh Circuit in *Taylor*, 810 F.2d at 1558, stated that, when a preliminary injunction is granted "on the merits" of a case—as distinguished from "a merely temporary order which decides no substantive issues but merely maintains the status quo"—an interim award of attorneys' fees is appropriate. However, we do not think this statement conflicts with our holding here, because—as was the case in *Young*—the plaintiffs in *Taylor* moved for attorneys' fees *after* "both parties agreed that

(continued...)

Furthermore, *Balark* and *Palmetto Properties* also are distinguishable from the present case because the plaintiffs in those two cases had secured exactly the kind of relief which the Supreme Court has indicated leads to prevailing party status. The plaintiffs in *Palmetto Properties* had received partial summary judgment and the plaintiffs in *Balark* were parties to a consent decree; the Supreme Court in *Buckhannon* explicitly recognized that these two forms

---

[4] (...continued)

plaintiffs' suit [was] moot." *Id.* at 1555; *see also Monahan v. State of Nebraska*, 687 F.2d 1164, 1171-72 (8th Cir. 1982).

The Fourth Circuit has held that a preliminary injunction is insufficient to constitute "an enforceable judgment on the merits or something akin to one for prevailing party purposes." *Smyth v. Rivero*, 282 F.3d 268, 277 (4th Cir.) (internal quotation omitted), *cert. denied*, 537 U.S. 825 (2002). In so deciding, the court placed great importance on the fact that, although a preliminary injunction hearing often includes "an inquiry into the merits of a party's claim," "the merits inquiry in the preliminary injunction context is necessarily abbreviated." *Id.* at 276. Moreover, the court reasoned that, because the grant of a preliminary injunction is dependent on several factors including the likelihood of success on the merits and "a balancing of likely harms," it indicates merely "a prediction of a probable, but necessarily uncertain, outcome." *Id. See also Smith v. Univ. of North Carolina*, 632 F.3d 316, 346 (4th Cir. 1980) (holding that plaintiff who had obtained a preliminary injunction was not entitled to an award of attorneys' fees based on that injunction when "on none of her claims [had she] ultimately obtained what she sought"). To the extent that the Fourth Circuit has adopted a *per se* rule that a preliminary injunction can never serve as a predicate for a an interim fee award, we are in respectful disagreement. Instead we follow the approach of the other circuits outlined earlier.

of resolution change the "legal relationship" between the parties and also carry the "judicial *imprimatur*" necessary to confer prevailing party status.[5] *Buckhannon*, 532 U.S. at 604-05. In *Balark* and *Palmetto Properties*, the grant of summary judgment and the entry of a consent decree represented the "*resolution* of a dispute which change[d] the legal relationship between [the plaintiff] and the defendant." *Garland*, 489 U.S. at 792 (emphasis added). No such resolution was reached in the present case.

In short, the plaintiffs have not brought to our attention any case in which we have affirmed an award of attorneys' fees that was made at a procedural point similar to the point at which the award was made in this case: when a preliminary injunction has been entered and affirmed on appeal but still further proceedings on the merits clearly are contemplated.[6] Therefore, we must conclude that our case

---

[5] We recently have interpreted *Buckhannon* as the Supreme Court's rejection of the notion that, "if a lawyer's effort produces a good result albeit not an actual judgment or other judicial relief, it should be compensible." *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 771 (7th Cir. 2004).

[6] The plaintiffs point to two cases from other circuits, *Chu Drua Cha v. Levine*, 701 F.2d 750 (8th Cir. 1983), and *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 339 (5th Cir. 1981), in which they claim plaintiffs received fee awards based only on the acquisition of preliminary injunctive relief with no further developments in the case. However, in *Chu Drua Cha*, the only statement the court made regarding the propriety of regarding the appellant as prevailing party was the following: "We hold that appellant is a prevailing party for purposes of preliminary injunctive relief. Although this relief may later be modified or vacated, it represents a substantial measure of success, and the
(continued...)

law does not permit the award of fees that was made by the district court.

We also think that it is worth pointing out that the district court's fee order suggests that, at the time that it entered the fee order, the court misapprehended, perhaps due to the parties' own representations, the nature and extent of the parties' challenges to the preliminary injunction. The court noted that, although it had "not reviewed the briefs on appeal," it understood that the Director's cross-appeal did "not challenge the preliminary injunction in all respects, but argue[d] that some of the schedules imposed by the injunction are unworkable." R.584 at 4. In fact, the Director's challenge to the preliminary injunction concerned more central aspects of the injunction than the timetables for

---

[6] (...continued)

award of attorneys' fees for this phase of the case is appropriate." *Chu Drua Cha*, 701 F.2d at 751. The Eighth Circuit did not refer to § 1988 or cite the standards that the Supreme Court had established for determining prevailing party status.

Similarly, in *Deerfield Medical Center*, the Fifth Circuit made an interim award of attorneys' fees to plaintiffs after they secured, on appeal, an injunction that permitted the plaintiffs to begin operating an abortion clinic. The Fifth Circuit reasoned that the plaintiffs were prevailing parties because "they ha[d] at least partially achieved the result sought in filing this action." *Deerfield Med. Ctr.*, 661 F.2d at 339. Although the court cited the Supreme Court's *Hanrahan* decision to support its reasoning, it did not explain how awarding attorneys' fees was consistent with the Court's instruction that "Congress intended to permit the interim award of counsel fees only when a party has *prevailed on the merits* of at least some of his claims." *Hanrahan*, 446 U.S. at 758 (emphasis added). The lack of transparent reasoning in these two cases convince us that neither *Chu Drua Cha* nor *Deerfield Medical Center* is useful to the plaintiffs.

hearings. *See Dupuy III*, 397 F.3d at 501 (noting the Director's contentions on appeal).

We are mindful of the extreme outlay of expenses that this case has required of the plaintiffs. *Cf. Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 723 (1974) (recognizing that, in some circumstances, "[t]o delay a fee award until the entire litigation is concluded" may be to "work substantial hardship on plaintiffs and their counsel"). Nonetheless, the case law of the Supreme Court and of this court simply does not permit an interim award of attorneys' fees to be made at the point in the litigation at which this award was made.

We trust that the parties will cooperate fully with the district court to bring this litigation to a prompt end.[7]

### Conclusion

For the foregoing reasons, we must reverse the award of attorneys' fees assessed against the Director.

REVERSED

A true Copy:
     Teste:

                     _____
                     *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*

---

[7] In the briefs presented to this court both parties set forth in some detail the issues they believe that the district court must address and the sort of evidentiary submissions that the court ought to consider. We have refrained from addressing any of those matters because we deem such discussion unnecessary to our decision today. We in no way wish to cabin the discretion of the district court to evaluate whatever specific submissions the litigants bring before it.